**Joseph TYLER, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 90–35389.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 7, 1991 *.

Decided March 13, 1991.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Nancy Shaw, Asst. Federal Public Defender, Anchorage, Alaska, for petitioner-appellant.

Sue Ellen Tatter, Asst. U.S. Atty., Anchorage, Alaska, Michael A. Stover, Gen. Counsel, Richard K. Preston, U.S. Parole Com'n, Chevy Chase, Md., for respondent-appellee.

Before WRIGHT, BRUNETTI and LEAVY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Tyler's parole was revoked after he violated its conditions. The parole commission determined that upon revocation he must forfeit the credit he would otherwise have received for his "street time."[1] Unhappy with the resulting delay of his mandatory release date, Tyler contested the forfeiture by a federal habeas motion. He appeals its denial.

## BACKGROUND

In 1983, the Superior Court for the District of Columbia accepted a guilty plea to robbery from Joseph Michael Tyler. He received an indeterminate sentence of three to nine years imprisonment and was incarcerated in Ray Brook, a federal correctional institution.

District of Columbia law applies because Tyler is a D.C. offender. Such an offender

---

1. "Street time" refers to time spent on parole. It should be distinguished from "good time credits," which are earned during incarceration.

may be imprisoned in a federal, rather than a district, institution. D.C.Code Ann. § 24–425 (1990). Federal incarceration places the prisoner under the jurisdiction of the United States Parole Commission. *See* D.C.Code Ann. §§ 24–209, 24–206(b) (1990). Federal prison officials must apply D.C. parole law to determine the release dates of the district offenders they house. *E.g., Walker v. Luther*, 830 F.2d 1208, 1217 (2d Cir.1987).

The District of Columbia enacted its Good Time Credits Act of 1986 (GTCA), 34 D.C.Reg. 484 (1987) (now codified at D.C. Code Ann. §§ 24–428 through –434 (1990)),[2] effective April 11, 1987. The GTCA requires crediting time on parole against prisoners' sentences so as to reduce the minimum and maximum terms of imprisonment. D.C.Code Ann. § 24–431(a) (1990).[3]

Tyler was paroled on November 10, 1986. His parole supervision was later transferred to Alaska. He violated his parole's conditions, prompting the U.S. Parole Commission to revoke it and resulting in his reincarceration on March 18, 1988. The commission denied him street time credit for his entire parole, relying upon D.C.Code § 24–206(a).[4]

While still in Alaska and acting pro se, Tyler completed a form captioned "MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY." His case was referred to a federal magistrate in Alaska and counsel was appointed.

The magistrate interpreted Tyler's action as a petition under 28 U.S.C. § 2241 for habeas relief against the U.S. Parole Commission.[5] Because Tyler was in custody in the District of Alaska, that district court had jurisdiction of his petition. 28 U.S.C. § 2241(d) (1988). The district judge adopted the magistrate's recommendation to deny the petition. Tyler timely appealed, giving us jurisdiction. *Id.* §§ 2253, 1291.

## DISCUSSION

Tyler argues that the GTCA impliedly repealed the older D.C. statute on which the federal parole commission relied. We first consider whether he has standing to invoke the protections of the GTCA. Finding that he does, we go on to analyze whether the GTCA worked an implied repeal.

### I. Standing

■ Tyler invokes the street time credit requirement of section 24–431(a). The United States argues that Tyler lacks standing to claim the benefit of any GTCA section, because the GTCA is expressly limited to prisoners housed in D.C. facilities. It cites *Moss v. Clark*, 886 F.2d 686 (4th

---

2. For brevity and convenience, our pinpoint citations of the GTCA refer to the current codification, not to the session law.

3. This subsection of the GTCA reads:

Every person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody or on parole as a result of the offense for which the sentence was imposed. When entering the final order in any case, the court shall provide that the person be given credit for the time spent in custody or on parole as a result of the offense for which sentence was imposed. D.C.Code Ann. § 24–431(a) (1990).

4. Congress enacted section 24–206(a) in 1932 and has made no substantive change in its relevant provisions. After authorizing revocation of a D.C. prisoner's parole, the section continues:

If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody.... *The time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced.* D.C.Code Ann. § 24–206(a) (1990) (emphasis added). We use "street time forfeiture" to refer to the emphasized sentence of this section.

5. A petition for habeas corpus, rather than a motion under 28 U.S.C. § 2255, constitutes the proper vehicle for obtaining judicial review of parole board decisions. *Andrino v. United States Bd. of Parole*, 550 F.2d 519, 520 (9th Cir.1977) (per curiam). *See also Tucker v. Carlson*, 925 F.2d 330, 331–32 (9th Cir.1991) (holding that a federal prisoner's pro se challenge to the duration of his confinement should be construed as a petition for habeas corpus under 28 U.S.C. § 2241).

Cir.1989), for the proposition that "[b]y its terms the Good Time Act applies only to inmates housed in District of Columbia facilities. D.C.Code § 24–428(a)." *Moss*, 886 F.2d at 688 (footnote omitted). We reject this challenge to Tyler's standing for two reasons.

First, the standing argument appears to be based upon an erroneous construction of the GTCA. The street time credit requirement applies to "[e]very person." D.C. Code Ann. § 24–431(a) (1990). On its face, this includes Tyler. While the section on "[i]nstitutional good time" is expressly limited to persons incarcerated in D.C. institutions, *see id.* § 24–428(a), nothing in the GTCA indicates that this limitation constricts the scope of the entire act. Indeed, the broader language of section 24–431(a) rebuts such a construction. Nor does *Moss* compel a contrary conclusion. The *Moss* court interpreted only section 24–428, entitled "Institutional good time." It did not examine section 24–431. *See* 886 F.2d at 688 & n. 2.

The second problem with the standing challenge is that it ignores part of Tyler's argument. Tyler argues that a pre-GTCA statute, section 24–206, should not have been applied to him because the GTCA impliedly repealed it. This older statute covers any D.C. offender, including federally-incarcerated ones like Tyler. *See* D.C. Code Ann. § 24–206 (1990). Because it covers him, he has standing to make his implied repeal argument, regardless of whether he is covered also by the GTCA.

## II. Did the GTCA Effect an Implied Repeal?

The pivotal issue is the relationship between the GTCA provision for street time credit and the older statute requiring parole violators to forfeit street time. The magistrate viewed the older statute as a still-valid exception to the GTCA's general rule of crediting offenders for their street time. The district judge agreed, discerning

no irreconcilable conflict between the two statutes.

We review de novo a district court's interpretations of both state and federal statutes. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). We see no reason to use a different standard of review for district court interpretations of D.C. statutes.

■ Under a "cardinal rule" of statutory construction, repeals by implication are not favored. *Morton v. Mancari*, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Id.* at 550, 94 S.Ct. at 2482.

The unique legal environment of the District of Columbia enhances our customary reluctance to find an implied repeal. The federal constitution grants Congress exclusive and plenary legislative power over the district, which includes the authority to establish and alter its method of governance. U.S. Const. art. I, § 8, cl. 17; *Palmore v. United States*, 411 U.S. 389, 397, 413, 93 S.Ct. 1670, 1676, 1684, 36 L.Ed.2d 342 (1973) (majority opinion and Douglas, J., dissenting). Congress created a D.C. council and delegated to it some legislative power, but Congress has reserved the power to disapprove the council's home rule enactments. District of Columbia Self–Government and Governmental Reorganization Act, Pub.L. No. 93–198, §§ 302, 401(a), 404(a), 601–603, 87 Stat. 774, 859–60, 894–97 (1973).

With narrow exceptions not relevant here, the D.C. council must submit its home rule enactments to Congress. *See* D.C. Code Ann. § 1–233(c)(1) (1990). Where the D.C. criminal code would be affected, the home rule statute gives Congress 60 days to disapprove the council's enactment. *Id.* § 1–233(c)(2). We must not permit implied repeals to serve as a detour around these requirements.[6]

---

6. The United States argues that the D.C. council lacks any power to repeal impliedly a congressionally-enacted D.C. statute, because this would

deprive Congress of its reserved rights to notice and an opportunity for disapproval. While the unique structure of the D.C. legislative process

To support his argument that the GTCA impliedly repealed street time forfeiture, Tyler relies mainly on administrative interpretations of the act that he says are consistent with its language and its purpose. He also implies that an equal protection violation will result if we do not accept his implied repeal theory.

### A. Administrative Interpretations of the GTCA

District and federal prison officials disagree over whether a D.C.Code offender must forfeit street time upon the revocation of parole. When it implemented the GTCA, the D.C. Department of Corrections adopted a rule requiring retention of street time after a parole revocation. (D.C.Mun. Regs. tit. 28, § 601.7 (1988)). The district's legal advisor, the D.C. Corporation Counsel, opined that the GTCA required retention. Because federal officials disagree, they still apply the street time forfeiture statute to D.C. offenders in federal prisons.

Tyler urges us to defer to the interpretation of the GTCA followed by D.C. officials. A court may defer to an agency's interpretation of a statute only when it is consistent with the statutory mandate and does not frustrate the underlying legislative policy. *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981). Courts, not administrative agencies, "are the final authorities on issues of statutory construction." *Id.* at 32, 102 S.Ct. at 42.

The administrative interpretations on which Tyler relies originate with an April 23, 1987 memorandum from the office of the Corporation Counsel to the D.C. Department of Corrections. This memorandum answered a number of questions about the then-new GTCA. In one paragraph, it finds the GTCA "inconsistent" with section 24–206. This paragraph simply contrasts the old and new statutes. It offers no analysis of whether their inconsistency is irreconcilable. Neither the disfavored status of implied repeals nor the provisions for congressional oversight of D.C. criminal legislation are acknowledged.

By a September 16, 1987 letter, the U.S. Parole Commission advised the Corporation Counsel that it disagreed with the district's view of the GTCA. The federal commission framed the issue as one of implied repeal. After setting out the applicable legal standards, it opined that section 24–206(a) should be viewed as a specific exception to the GTCA's more general requirement that prisoners be credited with their street time. It supported this reading by noting that neither the preenactment commentary to the GTCA nor the D.C. council's reported deliberations about the act showed any conscious legislative intent to make the significant change of repealing street time forfeiture.

The federal parole commission's analysis outlined an aspect of the GTCA's legislative history that suggested the D.C. council had rejected, for policy reasons, a proposal analogous to repealing street time forfeiture. One draft of the GTCA would have required that probationers be credited with their time on probation, even after probation was revoked. It was deleted after the D.C. Department of Corrections objected that this provision would undermine probationers' incentives to comply with probation conditions, especially near the end of probation. The federal analysis observed that the same policy argument could be made concerning parolees, and that it would be incongruous for the council to have accepted that argument for probationers but rejected it for parolees.[7]

The D.C. Corporation Counsel's reply of October 30, 1987 made essentially three arguments for adhering to the district's

makes us reluctant to find an implied repeal, we need not and do not reach this argument. We do not think that the D.C. council intended to repeal street time forfeiture.

7. In a footnote, the April 23 memorandum from the office of the D.C. Corporation Counsel recognized this legislative history. The footnote simply observed that the D.C. judiciary committee's report "does not shed light on the Judiciary Committee's thinking in this regard." Counsel did not consider what inferences might be drawn from this legislative history.

original interpretation. He rejected the federal view as inconsistent with the GTCA's "sense and purpose" of reducing the D.C. prison overcrowding problem by using credits to shorten sentences. He noted that the district's reading of the GTCA accorded with this purpose by permitting shorter imprisonment of all parolees, regardless of their behavior on parole.

The Corporation Counsel's reply also characterized the federal interpretation as contrary to the whole legislative scheme of the GTCA. He observed that as originally introduced, the GTCA would have expressly required retention of good time credits after revocation of parole. From this deleted proposal, he inferred an "unmistakable general intent ... that, even where parole is revoked, the time served on parole should to some extent be credited against the remainder of the maximum sentence."[8]

The Corporation Counsel's third rebuttal argument invoked the well-known canon of statutory construction that a court must, where possible, give effect to all phrases in a statute so that none become superfluous. *See* 2A Sutherland Statutory Construction § 46.06 (4th ed.1984). He argued that the federal construction of the GTCA would render the words "or on parole" in the first sentence of section 24–431(a) superfluous.[9] He rejected the federal commission's theory that the role of these words was only to forestall a reading of the GTCA that would exclude any credit for time spent on unrevoked paroles.

Under the circumstances here, we cannot defer to the district's statutory analysis. The district solidified its view of how the GTCA affected section 24–206 after a cursory analysis that neither mentioned nor attempted to apply the principle that implied repeals are disfavored. Although it advanced a more careful analysis in reporting its adherence to its original view, the flaws in the reanalysis cause us to question whether it was merely a post hoc rationalization of an ill-conceived position.

We find flaws in both the district's interpretation of legislative history and its application of canons of construction. *See supra* nn. 7–9. We also think that the district takes an overly simplistic view of the GTCA's purpose. In reciting that the D.C. council intended to alleviate prison overcrowding by shortening incarceration, the Corporation Counsel failed to recognize the council's sensitivity to competing policies, such as preserving probationers' incentives to comply with probation conditions. Because of the flaws in the district's statutory analysis, we decline to defer to it.

The U.S. Parole Commission bears some responsibility for administering the D.C. parole statutes. After the Attorney General assigns a D.C. offender to federal incarceration, the commission must use D.C. law to determine the offender's parole. *See Cosgrove v. Thornburgh,* 703 F.Supp. 995, 1004 & n. 6 (D.D.C.1988). Faced with an apparent conflict between an earlier specific statute and a later general statute, the commission took the appropriate step of harmonizing the two. Like the magistrate and the district judge, we agree with the Parole Commission that section 24–206 can be read as a still valid exception to the general rule of section 24–431. *Cf. Washington v. Miller,* 235 U.S. 422, 427–28, 35 S.Ct. 119, 121–22, 59 L.Ed. 295 (1914) (applying presumption that in such situations, the specific statute is intended to remain in

---

**8.** The Corporation Counsel asserted that nothing subsequent to the deletion of this proposal indicated any change in the GTCA sponsor's legislative intent. We have two reservations about this reasoning. First, the relevant intent is that of the entire council, not just that of the sponsor. 2A Sutherland Statutory Construction § 45.06 (4th ed. 1984). "Statements by sponsors must be evaluated cautiously." *Id.* § 48.15. Second, the very fact of deletion implies a legislative intent different from that inhering in the original proposal. *Cf.* Sutherland § 48.18 ("Generally, the rejection of an amendment indicates that the legislature does not intend the

bill to include the provisions embodied in the rejected amendment" (footnote omitted)).

**9.** This argument may prove too much. While the federal interpretation of section 24–431(a) does not give parole revokees "credit ... for time spent ... on parole," *see* D.C.Code Ann. § 24–431(a) (1990), it does credit every other parolee with his or her street time, just as this provision requires. The federal interpretation reads the words in question more narrowly, but it does not eliminate them.

force as an exception to the general one). We hold that the GTCA did not impliedly repeal the longstanding requirement of section 24–206 that parole violators forfeit their street time.

### B. Equal Protection

■ Tyler hints at an equal protection issue, arguing that where a difference between D.C. and federal parole regulations favors D.C. offenders, the difference "must be indulged to the benefit of" the offender. Neither Tyler nor the United States developed this issue in their presentations to this court. This fact, coupled with our rejection of Tyler's reading of the GTCA, causes us to reject his equal protection argument. We cannot seriously entertain an argument that an erroneous statutory interpretation should be perpetuated simply because it would favor a prisoner who has not yet benefited from it. The argument is not one for equal protection *of the laws.*

### CONCLUSION

Tyler has standing to argue that the GTCA entitles him to full credit for his street time, but his argument fails on the merits. Finding no irreconcilable conflict between the GTCA and the older street time forfeiture statute, we hold that the former did not impliedly repeal the latter. The district court correctly denied habeas relief.

AFFIRMED.