Charles LUCK, Appellant,

v.

DISTRICT OF COLUMBIA, et al., Appellees.

No. 92–SP–665.

District of Columbia Court of Appeals.

Argued Oct. 13, 1992.

Decided Nov. 24, 1992.

Katherine J. Henry, Washington, DC, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellees.

Before FERREN, SCHWELB and WAGNER, Associate Judges.

SCHWELB, Associate Judge:

On March 23, 1990, Charles Luck, a prisoner at Lorton Reformatory, filed this action in the United States District Court for the District of Columbia. He named as defendants the Chairman of the District's Parole Board and the Director of the District's Department of Corrections (DOC). Luck alleged that, in calculating the amount of time which he must serve on his sentence, the defendants had wrongfully denied him "good time" credit for "street" time which he had served on parole, in violation of the Good Time Credits Act of 1986 (GTCA), D.C.Code § 24–431(a) (1989). He prayed that the court award him declaratory and injunctive relief, as well as compensatory and punitive damages.

While Luck's suit was pending, the DOC recalculated his sentence. The agency awarded Luck credit for a parole term which began after April 11, 1987, the effective date of the GTCA. The DOC declined, however, to credit Luck for an earlier term which began prior to April 11, 1987. As a result of the recomputation, the sole remaining issue was whether Luck was entitled to credit for pre-Act street time.

Each party filed a motion for summary judgment. On October 30, 1990, in an unpublished order (*Luck I*), 1990 WL 179928, United States District Judge Royce C. Lamberth granted the defendants' motion, holding *inter alia* that the GTCA was prospective only and did not apply to the parole term which predated the Act.

Luck appealed to the United States Court of Appeals for the District of Columbia Circuit. On June 1, 1992, in an unpublished Memorandum Order (*Luck II*), the federal appellate court certified to this court, pursuant to D.C.Code § 11–723 (1989), the following question:

> Did the District of Columbia Parole Board and the District of Columbia Department of Corrections properly interpret section 24–431(a) of the Code of the District of Columbia in deciding that time spent on parole prior to April 11, 1987, cannot be credited against a person's sentence when that person's sentence is recomputed after April 11, 1987?

We answer the certified question in the affirmative.

## I
### THE FACTS [1]

On April 7, 1970, Luck was sentenced in the United States District Court for the District of Columbia to a combined term of eight to twenty-four years for the crimes of robbery, second degree burglary and grand larceny. On May 9, 1973 plaintiff escaped from custody. He was later apprehended in Maryland, and was subsequently prosecuted and convicted of an offense committed in that State. He remained incarcerated in Maryland until May 15, 1978. Upon the completion of his Maryland term, Luck was returned to the DOC to resume service of his original sentence.

On November 5, 1982, Luck was released on parole. On March 30, 1987, the Parole Board issued a warrant for his arrest for violations of the conditions of his release. On April 13, 1987, he was arrested on the Board's warrant. On May 22, 1987, the Board revoked plaintiff's parole, but immediately reparoled him, subject to his compliance with special conditions of narcotic surveillance and outpatient drug counseling. Luck was released to the community on July 1, 1987.

On August 21, 1989, the Board issued a second parole warrant for Luck's arrest, charging that he had failed to comply with the conditions of his release. Luck was apprehended and, following a new revocation hearing, the Board again revoked Luck's parole and remanded him to the custody of DOC to serve the remainder of his sentence.

Following the revocation of Luck's parole, the DOC recomputed the amount of time that Luck would be required to serve. Luck did not receive street time credit for the period which he had served on parole from November 1982 through April 1987. After initially also denying him credit for the second parole period, which began in July 1987 and ended in August 1989, the DOC ultimately credited Luck with the post-Act street time.

1. This statement of the facts is largely taken from Judge Lamberth's unpublished opinion in

## II
### THE RELEVANT STATUTES

Prior to the enactment of the GTCA, a prisoner was not entitled to good time credit for street time. The applicable statute then in force provided, in pertinent part, that if a grant of parole is revoked,

> the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any computation for good conduct which may be earned by him after his return to custody. . . . The time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced.

D.C.Code § 24–206(a) (1989).

 In 1986, the Council of the District of Columbia enacted the GTCA, which became effective on April 11, 1987. The Act was intended "to relieve prison overcrowding, to encourage prisoners to rehabilitate themselves, and, implicitly, to temper justice with mercy in those cases in which such tempering is appropriate." *Winters v. Ridley*, 596 A.2d 569, 569 (D.C. 1991) (per curiam) (Schwelb, J., concurring). To promote these purposes, the GTCA allowed "good time" to be credited against the prisoner's minimum sentence. D.C.Code § 24–431(a) (1989). Under prior law, good time was credited only against the maximum. D.C.Code § 24–206(a) (1989); *Winters, supra*, 596 A.2d at 570 (Schwelb, J., concurring). In addition, the Act provided for the first time that prisoners would receive credit for time which they successfully spent on parole. Specifically, § 24–431(a) provides in pertinent part that

> [e]very person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody *or on parole* as a result of the offense for which the sentence was imposed.

(Emphasis added.)

While the GTCA was under consideration by the Council, one of its principal sponsors

*Luck I.*

informed her colleagues that the legislation was not intended to be retroactive. Councilmember Wilhelmina Rolark, who chaired the Council's Committee on the Judiciary, stated that "the bill would be prospective only and in no way retroactively applied." Her remarks were included in the Judiciary Committee's report, which was issued on November 13, 1986. There was no suggestion by anyone that retroactive application was contemplated.[2]

On May 22, 1987, a few weeks after the GTCA became effective, the Director of the DOC issued Department Order No. 4340.2, which provides in pertinent part that

> [e]very resident returned to custody as a parole violator shall be given credit for time spent on parole *after 11 April 1987 until the time that the parole violation warrant is executed.*

(Emphasis added).

## III

### LEGAL DISCUSSION

*A. The Contentions of the Parties.*

According to Luck, the "plain language" of the GTCA means that whenever a prisoner's parole term is recomputed after the effective date of the Act, that prisoner is entitled to credit for time served on parole both before and after April 11, 1987. Luck expressly disclaims any contention that every prisoner became entitled to such a recomputation upon the enactment of the GTCA. He contends that the construction of the Act which he proposes would relieve prison overcrowding, a goal which he views as the dominant purpose of the GTCA. He also asks us to apply the rule of lenity, as well as the canon that statutes should be construed, if reasonably possible, to avoid substantial constitutional questions.

**2.** After the sentence quoted in the text at pages 4–5, § 24–431(a) goes on to provide that
[w]hen entering the final order in any case, the court shall provide that the person be given credit for the time spent in custody or on parole as a result of the offense for which sentence was imposed.
(Emphasis added). The reference in the statute to the court's entry of a final order, an act which must obviously occur in the future, tends

The District,[3] on the other hand, insists that § 24–431(a) must be read in conjunction with § 24–206(a), which was the sole legislative pronouncement on the issue, prior to the enactment of the GTCA, and which provided that a prisoner was entitled to no credit for time spent on parole. According to the District, a consideration of the two statutes together reflects a legislative design to grant credit for street time served after (but not for street time served before) the effective date of the Act. This result, says the District, is bolstered both by the legislative history of the GTCA and by its contemporaneous administrative construction. The District also argues that if the GTCA were construed as Luck suggests, then a prisoner's entitlement to credit for street time would be contingent upon a fortuitous event, namely, whether the sentence was recomputed before or after the effective date of the Act.

*B. The "Plain Language" Conundrum.*

Citing, *inter alia, Riggs National Bank v. District of Columbia,* 581 A.2d 1229, 1235 (D.C.1990), Luck asks us to construe the "plain language" of the GTCA as supporting his construction of it. The proposition that plain statutory language generally trumps other considerations is hardly subject to challenge. As the Supreme Court recently reminded us,

> courts must presume that a legislature says in a statute what it means and means in a statute what it says there.... When the words of a statute are unambiguous, then this first canon is also the last; judicial inquiry is complete.

*Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117

in some measure to reinforce our view that the provision was not designed to have a retroactive effect.

**3.** The Chairman of the Parole Board and the Director of the DOC are District of Columbia officials, and are represented by the District's Corporation Counsel. We refer to them for convenience as "the District."

L.Ed.2d 391 (1992) (citations and internal quotation marks omitted).[4]

Although the District appears to concede that Luck's "plain language" contention has at least superficial merit,[5] we find this concession to be an improvident one. The first sentence of § 24–431(a) states that "[e]very person shall be given credit ... for time spent ... on parole as a result of the offense for which the sentence was imposed." Read literally and in isolation, this language ostensibly entitles *every* sentenced prisoner who is incarcerated on or after the effective date of the Act to credit for time served on parole. On its face, the statute does not differentiate between persons whose sentences are recomputed in the normal course after the effective date of the Act and those whose sentences are not so recomputed. In other words, according to the unvarnished meaning of the words of the statute, the DOC would be required to recalculate the eligibility for good time credit for every prisoner who had been on parole in connection with the sentence under consideration, no matter how ancient his or her parole term may be.

■ Evidently recognizing that the legislature could not have intended so drastic a result without saying something "loud and clear" about it, Luck asks us to read the statute to mean that "every person *whose sentence is recomputed after the effective date of the Act* shall be given credit for [street time]." The italicized limitation, however, is not to be found in the text of the Act. According to the statutory language as written, a prisoner is entitled to credit for any time spent on parole *"as a result of the offense for which the sentence was imposed."* A prisoner is textually eligible for good time credits whether or not a post-Act recomputation of his or her sentence would otherwise occur. Luck is thus asking this court to read into § 24–431(a) a qualification that the drafters did not put there, and then to treat the statute (as so embellished) as though it were "plain language" written by the legislature without embellishment.

This we cannot do. As the Supreme Court recently reiterated in *West Virginia Univ. Hospitals, Inc. v. Casey,* — U.S. —, —, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991), (quoting *Iselin v. United States,* 270 U.S. 245, 250–51, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926) (Brandeis, J.)),

> [w]hat the [appellant] asks is not a construction of a statute but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence may be included within its scope. To supply omissions transcends the judicial function.

Once it has been determined that Luck's "plain language" argument requires judicial revision of the statute as enacted by the legislature, the force of that argument is necessarily, and in our view fatally, undermined. The same doom awaits Luck's contention that this court should accept his proposed construction of the Act because it would advance the statutory purpose by relieving overcrowding in the District's correctional facilities. An uncompromisingly literal interpretation of the act—that *every* prisoner became entitled, upon passage of the Act, to credit for time spent on parole as a result of the sentence, no matter how long ago he was on parole—might well require the release of a substantial number of incarcerated individuals, and thus improve conditions for those who remain. Any impact on the prison population which Luck's diluted "plain language" might accomplish would necessarily, however, be far more modest.

---

4. Sometimes, however, statutory construction is not quite as simple as that. Judge Learned Hand has cautioned that "[statutes] should be construed, not as theorems of Euclid, but with some imagination of the purposes which lie behind them." *Lehigh Valley Coal Co. v. Yensavage,* 218 F. 547, 553 (2d Cir.1914), *cert. denied,* 235 U.S. 705, 35 S.Ct. 282, 59 L.Ed. 434 (1915). More than thirty years later, Judge Hand added (and we have since reiterated) that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary." *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.) *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945) (quoted in *Riggs, supra,* 581 A.2d at 1235).

5. According to the District, "the plain language of § 24–431(a) ..., when read in isolation, does give facial credence to Luck's position...."

### C. Reconciling the Two Statutes.

■ In this case, as in our previous encounter with the GTCA, we are dealing not with one statute but with two. *Winters, supra,* 596 A.2d at 573, (Schwelb, J. concurring), *id.* at 581, (Ferren, J., concurring). When § 24–206(a) was the sole statute dealing with the issue now under consideration, it explicitly provided (and still provides) that prisoners in the District were not entitled to credit for time served on parole. Section 24–431(a) states, however, that prisoners are now entitled to credit for street time. "The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them.... *United States v. Freeman,* 44 U.S. (3 How.) 556, 564–65, 11 L.Ed. 724 (1845); *see also Holt v. United States,* 565 A.2d 970, 975 (D.C.1989) (en banc); *Winters, supra,* 596 A.2d at 581 (Ferren, J. concurring).

If § 24–431(a) were to be construed, as Luck suggests, to apply to a pre-Act parole term every time that a recomputation of the prisoner's term is fortuitously conducted after the effective date of the Act, such a construction would effectively and retroactively nullify the unambiguous terms of § 24–206(a) as to parole terms which were governed solely by that section prior to April 1987. Since, as we have noted, Luck's construction of § 24–431(a) is not supported by its plain language, and since there are several plausible interpretations of § 24–431(a),[6] we conclude that Luck is really asking us to find that § 24–431(a) has effected a retroactive *pro tanto* im-plied repeal of § 24–206. This we are not prepared to do.

### D. Applicable Canons of Construction.

■ Repeals by implication·are not favored; indeed, this principle is "one of the fundamental ground rules under which laws are framed." *Speyer v. Barry,* 588 A.2d 1147, 1164 (D.C.1991) (citations omitted); *see also Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974); *United States v. Hansen,* 249 U.S.App.D.C. 22, 26, 772 F.2d 940, 944 (1985). Moreover, "[s]tatutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose to do so plainly appears." *United States v. Magnolia Petroleum Co.,* 276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928); *see also Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); *Newsweek Magazine v. District of Columbia Comm'n on Human Rights,* 376 A.2d 777, 783 (D.C.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978). Luck is asking us to discard, or at least not to apply to him, two canons of statutory construction from which we should deviate only in exceptional cases.

■ There is nothing in the present record which would warrant our doing so here. Councilmember Rolark stated in forceful terms that the GTCA was prospective *only* and was to be *"in no way* retroactively applied."[7] Mrs. Rolark presided

---

**6.** The first such possible meaning is the absolutely literal one, which Luck has not asked us to adopt. See Part III B, *supra.* A second such construction is the one suggested by Luck. A third possible interpretation, advocated by the District, is that § 24–431(a) applies only to post-Act parole terms. Finally, in *Tyler v. United States,* 929 F.2d 451 (9th Cir.1991), the court, without certifying the question to this court or hearing from counsel for the District, adopted an interpretation of § 24–431(a) so restrictive that it appears to read the authorization of credit for street time out of the GTCA. Neither party has asked us to follow this curious construction, which appears to be based on the

doctrine that an earlier statute trumps a later one on the same subject.

**7.** Mrs. Rolark's remark can take us only so far. We agree with the following comment by the court in *Gersman v. Group Health Ass'n, Inc.,* 298 U.S.App.D.C. 23, 27, 975 F.2d 886, 891 (1992):

> It is only the statute itself that is law. A statement by a single member of the legislature or a report by a single committee (or even by an entire house) is not.

In the present case, however, no one challenged Mrs. Rolark's analysis, which is also consistent with the applicable canons of statutory construction.

over the Judiciary Committee, which proposed enactment of the GTCA, and she was one of the Act's principal sponsors. "It is the sponsors that we look to when the meaning of the statutory words is in doubt." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 394-95, 71 S.Ct. 745, 750-51, 95 L.Ed. 1035 (1951); *Winters, supra,* 596 A.2d at 575 (Schwelb, J. concurring).[8]

■ Moreover, § 24-431(a) was construed by the DOC, almost immediately after its enactment, as mandating credit only in connection with time served on parole after the effective date of the Act. This court accords "great weight" to any reasonable interpretation of a statute by the agency charged with its administration, and

> [t]his is particularly true where, as here, we have a contemporaneous construction of a statute by the [agency] charged with the responsibility of setting its machinery in motion and making the parts work efficiently and smoothly while they are yet untried and new.

*Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n,* 550 A.2d 51, 55 (D.C.1988) (quoting *Norwegian Nitrogen Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933) (Cardozo, J.)).

■ Luck asks us to apply the rule of lenity. Contrary to the District's unduly restrictive view of that rule, it applies not only to statutes which proscribe criminal conduct, but also to those that fix or alter the punishment for misdeeds previously done. "This policy embodies the instinctive distaste against men [and women] languishing in prison unless the lawmaker has clearly said they should." *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523,

30 L.Ed.2d 488 (1971); *Riggs, supra,* 581 A.2d at 1262.

■ The rule of lenity is, however, a secondary rule of construction. *Winters, supra,* 596 A.2d at 573 (Schwelb, J., concurring). "It can tip the balance in favor of criminal defendants only where, exclusive of the rule, a penal statute's language, structure, purpose, and legislative history leave its meaning genuinely in doubt." *Lemon v. United States,* 564 A.2d 1368, 1381 (D.C.1989) (quoting *United States v. Otherson,* 637 F.2d 1276, 1285 (9th Cir. 1980)). "The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers. That is not the function of the judiciary." *Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961). The rule "only serves as an aid to resolving an ambiguity; it is not to be used to beget one." *Id.*

In the present case, we have recognized the existence of some ambiguity in the text of § 24-431(a), standing alone. We must also factor into our calculus, however, the legislative history and administrative construction of the GTCA and its interplay with § 24-206. In light of these considerations, as well as the traditional reluctance of courts to apply legislative enactments retroactively or to find that statutes have been repealed by implication, we conclude that there is no remaining ambiguity to which we could legitimately apply the rule of lenity.

## IV

### CONCLUSION

For the foregoing reasons, we answer the certified question in the affirmative.

---

8. We do not think Mrs. Rolark's uncompromising phraseology can reasonably be construed to mean only that the Act was not designed to reach recalculations which were completed prior to its effective date, and no more. We do not think that the members of the Council wanted or needed reassurance about when prisoners' sentences were to be recalculated. Rather, Mrs. Rolark was assuring her colleagues that the act would have no retroactive consequences, and that previously settled expectations would not be revisited.

*So ordered.*[9]

---

**9.** We also disagree with Luck's contention that we should construe the GTCA retroactively in order to avoid what he characterizes as a substantial constitutional question. Essentially for the reasons stated by the court in *Crosby–Bey v. District of Columbia,* 700 F.Supp. 71, 72–73 (D.D.C.1988), we are satisfied that no such substantial constitutional question exists.