## In re C.G.H., Appellant.

### Nos. 12–FS–1198, 12–FS–1371.

District of Columbia Court of Appeals.

Argued March 20, 2013.
Decided Sept. 5, 2013.

---

Meredith Boylan, Washington, DC, for appellant.

Irving B. Nathan, Attorney General for the District of Columbia, with whom Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Stacy L. Anderson, Assistant Attorney General, filed a statement in lieu of brief, for appellee the District of Columbia.

Before BECKWITH and EASTERLY, Associate Judges, and REID, Senior Judge.

REID, Senior Judge:

This case involves the petition of appellant C.G.H. for the adoption of a non-biological child, J.D.F.A. ("F.A."), and a request for findings of special immigrant juvenile status ("SIJS") eligibility under 8 U.S.C. § 1101(a)(27)(J) (2009 Supp. II).[1]

C.G.H. now challenges the Family Court's denial of his request for findings of SIJS eligibility.

■ Several state and federal courts have addressed various versions and aspects of the SIJS statute in diverse factual contexts, but this is our first opportunity to consider the amended SIJS provision currently found in 8 U.S.C. § 1101(a)(27)(J)(i),[2] which states that the term "special immigrant" includes a child:

---

1. The full text of 8 U.S.C. § 1101(a)(27)(J) provides that the term "special immigrant" means—

(J) an immigrant who is present in the United States—

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter;

2. Congress first introduced special immigrant status for juveniles in the Immigration Act of 1990, which amended 8 U.S.C. § 1101. The federal statute then defined a special immigrant juvenile as one:

(i) who has been declared dependent on a juvenile court located in the United States and [who] has been deemed eligible by that court for long term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the [child's] best interest to be returned to the [child's] or parent's previous country of nationality or country of last habitual residence[.]

8 U.S.C. § 1101(a)(27)(J) (1991 Supp. II). In 1994, Congress amended the statute by requiring either a finding of dependency on a juvenile court or legal commitment to, or placement under the custody of, an agency or department of a state. 8 U.S.C. § 1101(a)(27)(J) (1994). After it was discovered that juveniles who entered the United States as visiting students were abusing the SIJS statute, Congress tightened the SIJS provision in 1997 by enacting an amendment requiring that the child must have "been deemed eligible by [the juvenile] court for long-term foster care due to abuse, neglect, or abandonment[.]" 8 U.S.C. § 1101(a)(27)(J) (1998 Supp. III); see also Yeboah v. United States Dep't of Justice, 345 F.3d 216, 221–22 (3d Cir.2003). Congress again amended the provision in 2008. It retained language requiring dependency on a juvenile court, or legal commitment to or placement under the custody of a state agency or department, but broadened the category of those to whom a child's custody could be legally committed. Congress added language recognizing that a child could be legally committed to or placed under the custody of "an individual or entity appointed by a [s]tate or juvenile court[.]" 8 U.S.C. § 1101(a)(27)(J)(i) (2009 Supp. II). In addition, Congress removed the "eligible for

who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[.]

Under the amended statute, an immigrant child may seek SIJS findings if he or she (1) has been declared dependent on a juvenile court; or (2) has been legally committed to or placed under the custody of an agency or department of a state; or (3) has been legally committed to or placed under the custody of an individual or entity appointed by a state or juvenile court; and other statutory requirements are met.

▌ In this case, C.G.H. contends that the Family Court erroneously concluded that, if the adoption decree were granted, F.A. would not be "placed under the custody of an individual appointed by the court." In the alternative, he argues that the Family Court erred by failing to conclude that "the pendency of [the adoption petition] makes [F.A.] dependent upon a juvenile court." We hold that upon adoption of a child in the District of Columbia, and within the meaning of 8 U.S.C. § 1101(a)(27)(J)(i), a child is legally committed to an adoptive parent, and that

parent has been appointed (that is, named as a parent), by the Family Court by virtue of the adoption decree. Accordingly, we vacate the judgment of the Family Court and remand this case for further proceedings consistent with our holding, that is, the Family Court must determine whether F.A. also meets the other requirements for SIJS eligibility under 8 U.S.C. § 1101(a)(27)(J)(i) and (ii) (2009 Supp. II)[3]; assuming the adoption is approved, the Family Court should issue the SIJS findings simultaneously with the entrance of the adoption decree.

## FACTUAL SUMMARY

The record reveals that F.A., the subject of C.G.H.'s adoption petition, was born on February 5, 1998, in Guatemala. During the early part of his life, F.A. lived with his biological parents, A.V. and R.F.F.A. ("R.F.A."), and two older siblings in Guatemala. In January 2004, A.V. fled Guatemala to the United States, allegedly because of abusive treatment by R.F.A., an alcoholic. She arranged for her sister and later for a neighbor to care for F.A. and his siblings in Guatemala, and sent money from the United States for that purpose.

R.F.A. allegedly physically abused F.A. and his siblings when he was inebriated, and he used money A.V. sent for the care of the children to buy alcohol. R.F.A. also allegedly threatened to hit F.A. if F.A. did not purchase alcohol for him. In October 2010, F.A. entered the United States

---

long-term foster care language," and replaced it with language about the non-viability of "reunification with 1 or both of the immigrant's parents" "due to abuse, neglect, abandonment, or a similar basis found under State law[.]" 8 U.S.C. § 1101(a)(27)(J)(i). *See also* Randi Mandelbaum and Elissa Steglish, *Disparate Outcomes: The Quest for Uniform Treatment of Immigrant Children*, 50 Fam. Ct. Rev. 606, 608 (2012).

**3.** After a finding of legal commitment, the Family Court must consider (1) whether the child's "reunification with 1 or both of [the child's] parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law"; and (2) if "it would not be in the [child's] best interest to be returned to the [child's] or parent's previous country of nationality or country of last habitual residence[.]" 8 U.S.C. § 1101(a)(27)(J)(i) and (ii).

through Texas, where the Office of Refugee Resettlement of the Department of Health and Human Services detained him until his release to A.V. in December 2010. F.A. then began living in the District of Columbia with A.V. and C.G.H. R.F.A. died in Guatemala on September 19, 2011, of "alcohol intoxication."

When C.G.H. filed his adoption petition, he and A.V. had been living together in the District of Columbia for five years, and they had a four-year-old biological child.[4] C.G.H. arrived in the United States in 1997 when he was fifteen or sixteen years old, and he has lived in the District of Columbia since 2001. In his request for findings of SIJS eligibility on behalf of F.A., C.G.H. alleged that "[f]amily reunification with [R.F.A.] is not viable because he is deceased, and therefore has constructively abandoned [F.A.]" He also stated that R.F.A. abused F.A. and his siblings by "hit[ting] them, unprovoked, when he was drunk" and by failing to purchase food for the children with money that A.V. sent for their care. Furthermore, he alleged that neither F.A.'s teenage sister nor his elderly grandparents could care for him in Guatemala, that F.A.'s older brother had left Guatemala, and that if F.A. "is forced to return to Guatemala, he will be at risk for being targeted by gangs and exposed to other dangerous people." A.V.'s affidavit in support of F.A.'s request for SIJS findings did not speak to her immigration status here in the United States; hence, it is not clear whether she has legal status, nor is C.G.H.'s status clear. In his motion accompanying the petition for adoption, C.G.H. asked the Family Court to "issue the factual findings necessary to enable [F.A.] to petition the U.S. Citizenship and Immigration Services ['USCIS'] for Special Immigrant Juvenile Status."

On June 20, 2012, the Family Court denied the request for SIJS findings pursuant to 8 U.S.C. § 1101(a)(27)(J), but permitted the adoption proceedings to continue. The Family Court found that F.A. "is not a 'dependent' of the Court because there are no allegations that would require court intervention to ensure proper care of the child." The Family Court also declared that, "even if it were to grant the petitioner's adoption, it would be unable to issue a finding that the minor child [had been] 'placed under the custody of, an individual or entity appointed by the [Family] Court' pursuant to 8 U.S.C. § 1101(a)(27)(J)." In support of this declaration, the Family Court cited one case from New Jersey, *D.C. v. A.B.C.*, 417 N.J.Super. 41, 8 A.3d 260 (Ct.Ch.Div.2010); a case that pertained to an action for custody under a New Jersey statute rather than an adoption proceeding. The court reasoned that in this case, "there is no custody dispute, and the biological mother's parental rights and duties as the physical custodian of the minor child will remain intact both throughout the adoption proceeding and after its conclusion regardless of the outcome," and there is no "claim that the Court would be required to intervene to find appropriate care for the prospective adoptee should the adoption not be granted."

At the time it issued its order denying the request for SIJS findings, the Family Court entered an eight-page detailed order referring C.G.H.'s petition to CFSA for an investigation and recommendation, pursuant to the District's adoption statutes, including D.C.Code § 16–307(b) (2001), which specifies the matters to be ad-

4. The interim report of the District of Columbia Child and Family Services Agency ("CFSA") regarding C.G.H.'s adoption petition states that C.G.H. "is married to the birth mother."

dressed in the investigation report and recommendation. In addition, the order of reference required Federal Bureau of Investigation, police, and child protection clearances for all adults living in the household, with the exception of F.A.'s mother, and medical clearances for all persons living in the household, including F.A.

Subsequently, C.G.H. filed a motion for reconsideration of the Family Court's denial of his motion for SIJS findings. He took issue with the conclusion that F.A. is not "dependent on the Court," and that there would be no commitment of F.A. to C.G.H.'s custody by the Family Court if the adoption petition were to be granted. In denying the motion for reconsideration, the trial court reiterated its view that under 8 U.S.C. § 1101(a)(27)(J)(i), F.A. is not "dependent on the Court," because F.A. "will continue to remain in his mother's custody," even though C.G.H. "will be recognized as an additional legal parent for [F.A.]" Moreover, the Family Court stated that it could not "conclude that [F.A.] will be placed under the custody of a court-appointed individual" because F.A. would continue to remain in A.V.'s custody.

C.G.H. noticed appeals from the Family Court's orders of June 20, 2012 (No. 12–FS–1198) (denying the motion for SIJS findings), and July 27, 2012 (No. 12–FS–1371) (denying the motion for reconsideration).

## ANALYSIS

C.G.H., on behalf of F.A., challenges the Family Court's denial of his request for SIJS findings.[5] He argues, in essence, that the Family Court misconstrued, or failed to properly apply, both District law and the federal SIJS amended statute,

specifically 8 U.S.C. § 1101(a)(27)(J)(i). He maintains that, consistent with the federal statute and upon finalization of his adoption petition, "it is plain [that F.A. will have] been 'placed under the custody of an individual appointed by the court.' " In the alternative, C.G.H. contends that "the pendency of [his] petition to adopt [F.A.] makes the child dependent upon a juvenile court."

Because we are faced with a question of law, our review is *de novo*. *In re C.L.O.*, 41 A.3d 502, 510 (D.C.2012); *see also In re D.S.*, 52 A.3d 887, 897 n. 16 (D.C.2012) ("We review *de novo* the legal question whether the trial court applied the proper legal standard." (italics added)). Our interpretation of the SIJS statute and pertinent provisions of the District's adoption statute is guided by the following canons of interpretation. "When interpreting a statute, the judicial task is to discern, and give effect to, the legislature's intent." *A.R. v. F.C.*, 33 A.3d 403, 405 (D.C.2011) (citing *Grayson v. AT & T Corp.*, 15 A.3d 219, 237 (D.C.2011) (en banc)). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (internal quotation marks omitted). Therefore, we "look first to the plain meaning of the statutory language." *In re Estate of James*, 743 A.2d 224, 227 (D.C.2000). "[W]e do not read statutory words in isolation; the language of surrounding and related paragraphs may be instrumental to understanding them." *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 652 (D.C.2005) (en

---

5. C.G.H. filed a brief with this court. The District of Columbia filed a statement in lieu of a brief, stating that "it does not have an interest in this appeal because, among other reasons, [F.A.] is not a ward of the District, and the appeal turns on the interpretation of federal, rather than District, law."

banc). "The words of a statute are 'a primary index but not the sole index to legislative intent'; the words 'cannot prevail over strong contrary indications in the legislative history....'" *Grayson, supra,* 15 A.3d at 238 (quoting *Citizens Ass'n of Georgetown v. Zoning Comm'n of the District of Columbia,* 392 A.2d 1027, 1033 (D.C.1978) (en banc)). Furthermore, "if divers statutes relate to the same thing, they ought to be taken into consideration in construing anyone of them...." *Luck v. District of Columbia,* 617 A.2d 509, 514 (D.C.1992) (internal quotation marks omitted).

Under the SIJS statute, the first requirement for eligibility as a special immigrant child may be satisfied in one of three ways, as we stated earlier; however, only two are applicable to this case. That is, C.G.H. may meet the first requirement by showing that F.A. (1) "has been declared dependent on a juvenile [or family] court located in the United States," or (2) has been "legally committed to, or placed under the custody of ... an individual ... appointed by a State or juvenile [or family] court located in the United States." 8 U.S.C. § 1101(a)(27)(J)(i) (2009 Supp. II). C.G.H.'s main argument is, in essence, that the Family Court erred in interpreting the words "committed," "placed," and "appointed."

Consistent with the primary rule of statutory construction, we first examine the plain meaning of the key words identified above, keeping in mind the canon that "the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Peoples Drug Stores, Inc., supra,* 470 A.2d at 753 (internal quotation marks and brackets omitted). Webster's Dictio-

nary assists us in providing the meanings commonly attributed to the identified words. To "commit" means "to give over to another care or use," to "entrust," or "to place officially"; "commitment" means "official consignment"; "consign" means "to entrust to the care of another," and to "entrust" means "to give over (something) to another for care." WEBSTER'S II NEW COLLEGE DICTIONARY 231, 246, 384 (3d ed. 2005). To "place" means "to appoint to a post" or "position." *Id.* at 361. To "appoint" means "to name to fill an office or position." *Id.* at 56. When we apply the ordinary sense of the words to the interpretation of the SIJS statute, the first requirement for eligibility as a special immigrant juvenile is that the child be entrusted to the care of another, that is, that the child be placed officially with someone named or appointed by a juvenile or family court.

Within the context of this case, the question we confront is whether an adoption fits the first eligibility requirement of the SIJS statute, that is, whether an adoption means that the child is entrusted to the care of the adoptive parent, or is placed officially with someone named or appointed by the family court. To answer that question we turn to another canon of statutory interpretation, "if divers [or various] statutes relate to the same thing, they ought to be taken into consideration in construing anyone of them." *Luck, supra,* 617 A.2d at 514. Since we are interpreting the SIJS statute in an adoption case, our adoption statute clearly is related to our analysis.

Under District law, "[a]ny person may petition the court for a decree of adoption."[6] D.C.Code § 16–302 (2001). Con-

---

**6.** Proceedings under the District's statute are extensive. For example, D.C.Code § 16–307 requires the Family Court to refer a petition for adoption "for investigation, report and recommendation"; the specific matters to be investigated are detailed in the statute.

sent to the adoption by a non-biological parent may be required from a biological parent, as it was in this case. D.C.Code § 16–304(b) (2010 Supp.). Significantly, D.C.Code § 16–312 sets forth the "legal effects" of an adoption. A final adoption decree "establishes the relationship of natural parent and natural child between adopter and adoptee for all purposes, including mutual rights of inheritance and succession as if adoptee were born to adopter." D.C.Code § 16–312(a) (2001). Thus, under District law, the adoptive parent becomes a natural parent in the eyes of the law and, as such, the adopted child is entrusted to the care of the adoptive parent when the child is officially placed with the person that the court has named as an adoptive or natural parent. We conclude that within the meaning of the SIJS statute and the District's adoption statute, an adopted child is "legally committed to, or placed under the custody of . . . an individual . . . appointed by a . . . juvenile [or family] court." 8 U.S.C. § 1101(a)(27)(J)(i) (2009 Supp. II).

Our conclusion is consistent with that reached in proposed regulations by the federal Department of Homeland Security, which administers the SIJS statute. Proposed section 204.11(b)(2) states, in part: "Commitment to or placement under the custody of an individual can include adoption and guardianship"; and the preamble to the proposed regulations states that the proposed regulation "clarifies that a juvenile who is adopted or placed under guardianship is eligible for SIJ classification." Special Immigrant Juvenile Petitions, 76 Fed. Reg. 54978–01 (proposed Sept. 6, 2011) (to be codified at 8 C.F.R. parts 204, 205 & 245).

Our conclusion as to the meaning of the first requirement for SIJS eligibility is consistent also with that reached by the New York appellate courts. *In re Emma M.*, 74 A.D.3d 968, 902 N.Y.S.2d 651 (2010), concerned a Grenada native who lived in New York with a couple. The child's mother was deceased and the father, who lived in Grenada, had neglected the child; in addition, the father consented to the adoption of the child by the couple. The Kings County Family Court approved the child's adoption in 2006, but denied the child's 2009 motion for SIJS findings. The Appellate Division reversed and granted the motion for SIJS findings, concluding, in part, that "by reason of her adoption, [the child] had been legally committed by the Family Court to her adoptive parents, who were appointed by the Family Court when it approved the adoption." *Id.* at 652. *See also In re Hei Ting C.*, 109 A.D.3d 100, 969 N.Y.S.2d 150, 151 (2013) (concluding that in New York the requirement of dependency upon the court under the SIJS statute can be established by a guardianship, adoption, or custody petition).

In sum, we conclude that the adoption of F.A. by C.G.H. would satisfy the first requirement for eligibility under the SIJS statute, because an adoption decree in the District of Columbia means that C.G.H. becomes the natural parent of F.A., and hence, F.A. is "legally committed to, or placed under the custody of, . . . an individual appointed by a . . . juvenile [or family] court located in the United States." 8 U.S.C. § 1101(a)(27)(J)(i). Therefore, the Family Court erred in "find[ing] that even if it were to grant the petitioner's adoption, it would be unable to issue a finding that the minor child [had been] 'placed

---

D.C.Code § 16–307(b) (2001). D.C.Code § 16–309 states the standards under which an adoption petition may be granted, including

whether an adoption "will be for the best interests of the prospective adoptee." D.C.Code § 16–309(b)(3) (2011 Supp.).

under the custody of, an individual or entity appointed by the [Family] Court' pursuant to 8 U.S.C. § 1101(a)(27)(J)." [7]

Accordingly, we vacate the judgment of the Family Court and remand this case for further proceedings consistent with our holding, that is, the Family Court must determine whether F.A. also meets the other requirements for SIJS eligibility under 8 U.S.C. § 1101(a)(27)(J)(i) and (ii) (2009 Supp. II); assuming the adoption is approved, the Family Court should issue the SIJS findings simultaneously with the entrance of the adoption decree.

*So ordered.*

---

7. The Family Court's reliance on *D.C. v. A.B.C.* was misplaced. *D.C. v. A.B.C.* was "an action for custody of [a] minor child" under a New Jersey statute, which, among other things, provided that, " 'when the parents of any minor child or the parent or other person having the actual care and custody of any minor child are grossly immoral or unfit to be entrusted with the care and education of such child,' " any interested person could institute an action for custody under the statute. 8 A.3d at 261, 263 (quoting N.J. Stat. Ann. § 9:2–9 (West 1991)). By contrast, C.G.H. does not have to prove unfitness to petition for adoption of F.A.; he only needs consent from A.V. D.C.Code § 16–304(b) (2010 Supp.). The New Jersey court in *D.C. v. A.B.C.* rejected a biological father's wife's petition for custody because she did not prove that the biological father was unfit; whereas in the instant matter, the District's adoption statutes clearly envision an adoption by a third-party that does not sacrifice the rights of the existing parent.