**F.W. WOOLWORTH COMPANY, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, Respondent.[1]**

No. 89–590.

District of Columbia Court of Appeals.

Submitted April 5, 1990.

Decided Aug. 27, 1990.

---

1. Petitioner originally named as respondent the District of Columbia Department of Consumer and Regulatory Affairs. Because petitioner seeks review of a decision of the District of Columbia Board of Appeals and Review, we have corrected the caption to so reflect. Similarly, we have corrected the caption to reflect that petitioner is a company, not an individual.

Eric J. Sanne, Washington, D.C., was on the brief, for petitioner.

Herbert O. Reid, Sr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and James C. McKay, Jr., Asst. Corp. Counsel, Washington, D.C., were on brief for respondent.

Before FERREN and FARRELL, Associate Judges, and MACK, Senior Judge.

FERREN, Associate Judge:

F.W. Woolworth Company appeals a decision of the Board of Appeals and Review sustaining the Department of Consumer and Regulatory Affairs' imposition of a civil fine for unlicensed mechanical amusement machines but reducing the fine from $400 to $250. Woolworth contends that (1) in legal effect, Woolworth was licensed because "the unrebutted evidence demonstrated the licenses had been paid for but had not [been] issued by the District of Columbia"; (2) the Board had no authority to modify and uphold a fine that

the Department had "cited under incorrect statutory authority and in the wrong amount"; and (3) the fine was wrongly imposed under a criminal, rather than a civil, regulatory provision. Because we perceive Woolworth's third argument as a jurisdictional attack, we consider it first and conclude that the Department had jurisdiction under the District of Columbia Code to impose a civil fine. However, upon consideration of the statutory and regulatory provisions cited by the Department and the Board in connection with Woolworth's second argument, we conclude the Department has not exercised its jurisdiction to prescribe a civil fine for the infraction at issue. For this reason, we must reverse and remand for further proceedings.[2]

## I.

The Department charged Woolworth with operating a vending machine without a license, citing D.C.Code § 47–2819 (1987). (An additional charge was dismissed.) Investigator Wilfred Usher testified at the hearing before the administrative law judge (ALJ) that on June 20, 1988, he "went into F.W. Woolworth and requested to see ... all of the applicable licenses. * * * [T]here was no license for ... vending machines...." According to Usher, "[t]here were four mechanical amusement machines" located in the front of the store. Al Galbreth testified on behalf of Woolworth, stating, "[t]he vending machines are not our vending machines. They are from a company that—I guess you can say they lease space from us. They have a license and when we contacted them about this they sent us our own license...."

After a short recess, Investigator Usher presented evidence that an old license issued to Woolworth for vending machines had expired on May 31, 1988 and that a

new license for two vending machines had been issued to Woolworth on July 1, 1988. According to Galbreth, although the license listed Woolworth as the responsible party, the address listed was that of the leasing company, not Woolworth. Usher then testified that the incorrect address invalidated the license.

The ALJ stated before ending the hearing:

> I ... have a problem with the vending machine situation because first of all this license is only for two and the Inspectors have indicated that there are four and because of the fact by your testimony that the name and address don't match as to who is responsible for the machines and especially if you are saying that F.W. Woolworth does not own them and there is no other name on there.

In her decision and order, the ALJ found:

> There are four Mech[anical] amusement machines in [the] store that were not licensed on [the] date of infraction. A license has since been obtained for two machines, al[though] respondent argues they are not responsible for machines even though Resp[ondent]'s name is on [the] license.

The ALJ concluded that "Respondent ... is liable for violation of D.C.Code § 47–2819 because [the] license was obtained in Respondent's name, mitigated by [the] license being obtained for 2 machines." She fined Woolworth $400 for the violation.

## II.

Woolworth appealed this decision to the Board. The Board heard arguments from both parties. Woolworth argued, and the District of Columbia conceded, that the ALJ had cited the wrong statute in her decision and order.[3] Woolworth, through counsel, indicated that it realized 19 DCMR § 1400 (1983) contained the provisions "un-

---

**2.** There is no evidence in the record of the hearing before the administrative law judge (ALJ) to support Woolworth's first argument: that it had complied with all the licensing requirements cited by the Department. The Board limits its review to the record before the ALJ, *see* 1 DCMR § 510.1, 34 D.C.Reg. 2493–94 (1987), and thus we, too, are limited to that

factual record. Woolworth's first argument accordingly fails.

**3.** The ALJ cited D.C.Code § 47–2819, a provision applicable to "slot weighing machines" and "slot machines used for dispensing foodstuffs or refreshments of any kind."

der which licensing guidelines are found for amusement machines."[4] Counsel further stated, "The real issue here is the question of whether or not there was a violation in substance of the licensing procedures in the law." Woolworth claimed prejudice from the citation error because Woolworth was fined in excess of the alleged $300 maximum allowed by the applicable regulation, 19 DCMR § 1400.7.[5] Woolworth also argued the ALJ had determined that a license for two machines had been issued, a fact suggesting that no violation had occurred with respect to those two machines. (Woolworth apparently ignored the ALJ's actual finding that a license for two "ha[d] since been obtained," *i.e.,* subsequent to the violation.) Woolworth argued, finally, that it should not be penalized because the responsible party, the leasing company, had paid for licensing all four machines as of the date of the alleged violation, but a license had not yet been issued.

The Board ruled:

We are persuaded that the hearing examiner applied the wrong statute here. Notwithstanding that fact we are also persuaded that there was in fact a violation on that particular day. And I don't necessarily think that that would change or I guess the A[L]J's error was in fact kind of harmless with respect to the existence of the violation.

Having considered the evidence and the testimony or at least the hearing transcript, and the fact that the F.W. Woolworth [Company] should have had a particular license displayed on that particular date that we are going to sustain the violation, but reduce the fine to $250.00.

This appeal followed.

### III.

We address, first, Woolworth's contention that the Board inappropriately ap-plied 19 DCMR § 1400.1 in lieu of the statute cited by the ALJ. The Board concluded, and we agree, that the ALJ's citation error was harmless in one respect: Woolworth acknowledged during argument before the Board that it had been aware the charged wrong actually concerned a violation under 19 DCMR § 1400, specifically § 1400.1, see *supra* note 4. The incorrect citation to D.C.Code § 47–2819, see *supra* note 3, therefore, apparently did not deprive Woolworth of notice of the charge. *Cf. Mannan v. District of Columbia Bd. of Medicine,* 558 A.2d 329, 333–34 (D.C. 1989) (where petitioner had notice of charges and was not prejudiced in defending against them by erroneous citation, error did not divest Board of Medicine of jurisdiction).

Woolworth claims, nonetheless, that the Board misapplied the regulations under 19 DCMR § 1400. At the hearing before the Board, Woolworth quoted that portion of 19 DCMR § 1400.7, see *supra* note 5, which provides a penalty of not more than $300 for each violation of 19 DCMR § 1400 (including, of course, § 1400.1). Woolworth then claimed the ALJ had imposed an excessive fine of $400. The Board reduced the fine to $250, possibly in response to this argument. Woolworth now presents a new argument on appeal: the Department and the Board have no authority whatsoever to use § 1400.7 to impose a civil sanction. More specifically, Woolworth argues that § 1400.7 provides only for criminal penalties; that the proceeding was civil, not criminal; and that the Board has no authority to use a criminal penalty provision as the basis for a civil fine. Woolworth adds that 19 DCMR § 1400 nowhere else provides for a civil penalty. Because this is a jurisdictional argument, Woolworth cannot be deemed to have

---

4. 19 DCMR § 1400.1 provides:

Owners or operators of establishments in which mechanical amusement machines are offered for public use shall be required to obtain annual licenses to offer mechanical amusement machines for public use, and to pay the required license fee.

5. 19 DCMR § 1400.7 provides:

Any person, firm, corporation, or association violating any of the provisions of this chapter shall, upon conviction, be fined not more than three hundred ($300) dollars or imprisoned for not more than ninety (90) days for each offense.

waived it by failing to raise it before the ALJ and the Board. *See Mannan*, 558 A.2d at 333 n. 11 ("Subject matter jurisdiction is subject to review at any time."). We must accordingly deal with it now.

■ We agree with Woolworth that 19 DCMR § 1400.7 provides only for criminal penalties and that the action against Woolworth was a civil proceeding. The Board, however, cites D.C.Code § 47–2846 (1987), as authority under which the Department may impose a civil sanction for the violation at issue here. According to § 47–2846, "[c]ivil fines ... may be imposed as alternative sanctions [to criminal penalties] for any infraction of ... any rules or regulations issued under the authority of this chapter [the General Licensure Law, Chapter 28 of Title 47 of the D.C.Code], pursuant to [the Department of Consumer and Regulatory Affairs Civil Infractions Act of 1985]." [6] We must inquire, therefore, whether the regulation Woolworth is charged with violating, 19 DCMR § 1400.1, can be called a "rule[ ] or regulation[ ] issued under the authority of" the General Licensure Law.

■ The language that now appears in 19 DCMR § 1400.1 was originally issued on February 12, 1958 as part of Article 36 Section 2 of the Police Regulations of the District of Columbia. Those regulations were promulgated under the authority of what are now D.C.Code §§ 47–2842(a), –2844(a) (1987 & Supp.1989).[7] Although neither party cites either § 47–2842(a) or § 47–2844(a), it appears to us that the regulations issued pursuant to these sections—Article 36, now 19 DCMR § 1400—are "regulations issued under the authority of" the General Licensure Law. Accordingly, pursuant to the Civil Infractions Act, D.C.Code §§ 6–2701 to –2723, the Department has jurisdiction under § 47–2846 to impose civil fines in lieu of criminal penalties for violations of 19 DCMR § 1400.1. The fact that the Department has such jurisdiction, however, does not necessarily mean that the Department as yet has lawfully exercised that jurisdiction by prescribing a civil fine for violating § 1400.1. We turn to this latter inquiry.

### IV.

Woolworth argues that the Department had no authority to impose, and in any

---

**6.** The Department derives its general authority to impose civil fines from the Department of Consumer and Regulatory Affairs Civil Infractions Act of 1985 (the Civil Infractions Act), D.C.Code §§ 6–2701 to –2723 (1989), which took effect on October 5, 1985 and applies only to violations which occur, or are discovered, after that date. *See* note to D.C.Code § 47–2846; D.C.Law 6–42, 32 D.C.Reg. 5946 (1985). Title I of D.C.Law 6–42 establishes that the purposes of the Civil Infractions Act are "to provide for the imposition of alternative civil sanctions *for infractions of laws and regulations amended by title IV*, and to provide for a uniform and expeditious system of administrative adjudication with respect to the infractions." D.C.Law 6–42, § 101, 32 D.C.Reg. 4450 (1985); D.C.Code § 6–2701 (1989) (emphasis added). Title IV of the law consists of eighty-nine separate sections, each section amending at least one provision of the District of Columbia Code or the District of Columbia Municipal Regulations. *See* 32 D.C. Reg. 4455–83 (1985). Section 469 of title IV specifically amends D.C.Code § 47–2846: the penalty provision of the General Licensure Law, Chapter 28 of Title 47 of the District of Columbia Code. The Civil Infractions Act, therefore, gives the Department jurisdiction over rules and regulations issued under the authority of the General Licensure Law.

**7.** D.C.Code § 47–2842(a) provides, in relevant part:

The Council of the District of Columbia is authorized and empowered when in its discretion such is deemed advisable, to require a license of other businesses or callings not listed in this chapter [Chapter 28 of Title 47] ... and which, in its judgment, require inspection, supervision, regulation, or any other activity or expenditure by any municipal agencies....

D.C.Code § 47–2844(a) provides:

The Council of the District of Columbia is further authorized and empowered to make any regulations that may be necessary in furtherance of the purpose of this chapter and the Mayor is further authorized and empowered to suspend or revoke any license issued hereunder when, in his [or her] judgment, such is deemed desirable in the interest of public decency or the protection of lives, limbs, health, comfort, and quiet of the citizens of the District of Columbia, or for any other reason he [or she] may deem sufficient.

In 1958, when Article 36 of the Police Regulations was promulgated, the substance of these sections appeared in D.C.Code §§ 47–2344, –2345(a).

event the Board had no power to modify, the fine levied by the Department. We therefore look first at the Civil Infractions Act and related regulations to determine whether the ALJ was authorized to impose a civil penalty for Woolworth's violation of regulation § 1400.1 under the General Licensure Law.

■ According to the Civil Infractions Act, D.C.Code § 6–2704(a)(1), "The Mayor shall prepare and periodically amend a schedule of fines. The schedule of fines shall be submitted to the Council of the District of Columbia ... for its approval or disapproval, in whole or in part, by resolution." Such a schedule of fines became effective September 4, 1987, and was published as 1 DCMR §§ 1200 to 1231, 34 D.C.Reg. 5736–84 (1987). This schedule defines five classes of infractions, see 1 DCMR § 1200.1, lists the fines applicable to each class of infractions, see 1 DCMR § 1201.1, and categorizes violations of more than 150 statutory provisions, as well as violations of more than 500 regulatory provisions, into one of the five classes, see 1 DCMR §§ 1211 to 1231. Violation of 19 DCMR § 1400.1 is noticeably missing from this extensive list.[8]

Given the fact that violation of 19 DCMR § 1400.1 is not listed on the schedule of civil fines, we confront the question whether the ALJ had any other lawful basis for imposing a civil fine. The Board argues on appeal that 1 DCMR § 1214.2—a "catchall provision" in the Civil Infractions Act regulations—"catches" Woolworth's violation and thus provides authority for the civil fine. We find this argument unpersuasive. Section 1214.2 provides: "Violation of any provision of [a] statute or rule cited elsewhere in this section requiring the periodic renewal of a license, certificate, or registration, shall be a Class 3 infraction." This provision, by its own terms, applies only to statutes or rules "cited elsewhere in this section." As we have noted, 19 DCMR § 1400.1 is not among those rules and statutes. Therefore, § 1214.2 does not appear to "catch" Woolworth at all.

■ The District argues, nonetheless, that because 19 DCMR § 1400.1 "was promulgated pursuant to the General Licensure Law, and provisions of that statute are cited throughout 1 DCMR § 1214," the catchall applies. We disagree. Section 1214.1 consists of a list of thirty-nine specific provisions of either the D.C.Code or the DCMR; it does not include 19 DCMR § 1400.1. According to § 1214.1, violation of any of these provisions is categorized as a Class 2 infraction.[9] The purpose of § 1214.2 is to categorize the failure to renew a license required by any of the thirty-nine provisions as a Class 3 infraction[10]—and nothing more. The fact that some regulations under the General Licensure Law, but not 19 DCMR § 1400.1, are included in the list cuts against the District's argument, not in favor of it as contended. Even if there is not a clear implication of intentional exclusion when so many other similar regulations are expressly included, there is nonetheless an omission, for whatever reason, which we will

---

8. The District correctly notes that the ALJ would have had authority under the Civil Infractions Act regulations to impose a civil fine for violation of D.C.Code § 47–2819 (pertaining to "slot machines")—the statute she incorrectly cited. See 1 DCMR § 1214.1(r) (categorizing violation of § 47–2819 as a Class 2 infraction). Similarly, the Civil Infractions Act regulations provide authority for imposing a civil fine for violating D.C.Code § 47–2404(b)(3) (1987), which requires a license for a cigarette vending machine. See 1 DCMR § 1214.1(e). These are the only regulations under the Civil Infractions Act that refer to any sort of vending machines.

9. 1 DCMR § 1200.1(b) defines a Class 2 infraction as follows:

Infractions that result from flagrant, fraudulent, or willful conduct, or unlicensed activity, or that are imminently dangerous to the health, safety, or welfare of persons within the District of Columbia[.]

10. 1 DCMR § 1200.1(c) defines a Class 3 infraction as follows:

Infractions that involve a failure to comply with a law or rule requiring periodic renewal of licenses or permits, or infractions that are very serious and have an immediate, substantial impact on the health, safety, or welfare of persons within the District of Columbia[.]

not ignore.[11] The Department does have authority to include a § 1400.1 violation among the classes of regulatory violations subject to civil fines. *See* D.C.Code § 47–2846. But, it has not yet done so using the required formal procedures. *See* D.C.Code § 6–2704(a)(1) (1989). It may not impose a fine on an ad hoc basis, without adequate notice, as would be the case here if the fine were sustained.[12]

In sum, the Board has cited no lawfully prescribed civil fine for a violation of 19 DCMR § 1400.1. We therefore must reverse and remand the case to the Board for further proceedings consistent with this opinion.

*So ordered.*

11. We note that neither party has argued that another catchall provision, 1 DCMR § 1200.2, applies. That section provides: "The schedule of fines may also include infractions that have not been classified in accordance with § 1200.1." Because neither party has cited this section and because its meaning is far from self-evident, we do not consider its application, if any, to this case.

12. We note that the ALJ apparently concluded that Woolworth had committed one Class 2 infraction, see *supra* note 9, calling for a $500 fine under the Civil Infractions Act schedule of fines, 1 DCMR §§ 1200.1(b), 1201.1(b)(1), 34 D.C.Reg. 5736–37 (1987), but found mitigating circumstances permitting a $400 fine. (The ALJ's authority, if any, to reduce a fine because of mitigating circumstances is not apparent from the regulations.) The Department, however, argued in its motion for reconsideration by the Board, and the Board argues in its brief on appeal, that the ALJ must have found four Class 3 infractions, see *supra* note 10, requiring four $100 fines. *See* 1 DCMR §§ 1200.1(c), 1201.1(c)(1), 34 D.C.Reg. 5736–37 (1987). This is a dubious proposition in light of the fact that Woolworth was charged with only one violation. Moreover, the Board's reduction of the fine from $400 to $250 is not easily explained by reference to the classes of infractions under 1 DCMR § 1200.1. Assuming the $400 fine could be le-

gitimately imposed, the reduction apparently would be proscribed under D.C.Code § 6–2723 (1989) (Board of Appeals and Review "shall have power to affirm, reverse, or modify the order of the hearing examiner" but "may not modify a monetary sanction imposed by a hearing examiner if that sanction is within the limits established by law or regulation."). Because we reverse the Board's decision solely by reference to the absence of an authorized civil fine for a violation of 19 DCMR § 1400.1, we do not need to reach the issues posed by the ALJ's and the Board's failures to explain the bases for their respective rulings by reference to the specific classifications and fines prescribed by regulation. We do note, however, as guidance for the future, that even if there were a civil fine available here, a record of the sort presented in this case is not clear enough at either the ALJ or the Board level to permit appellate court review; the ALJ and the Board have not explained what was being done and the authority for doing it. If, for example, the catchall intended by 1 DCMR § 1200.1 were applicable here—an issue not presented on this appeal, see *supra* note 11—and if that catchall provided enough notice of a civil fine to satisfy due process, the ALJ's and the Board's rulings (fining $400 and $250, respectively) would be held arbitrary and capricious for lack of sufficient explanation in reference to the existing classification scheme for civil fines.