**BERNSTEIN MANAGEMENT CORPORATION,**
Petitioner,

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION,**
Respondent.

No. 05–AA–918.

District of Columbia Court of Appeals.

Argued Oct. 19, 2006.
Decided July 10, 2008.

---

Richard W. Luchs, with whom Roger D. Luchs, Washington, DC, was on the brief, for petitioner.

William J. Earl, Assistant Attorney General for the District of Columbia, with

whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, and Edward E. Schwab, Deputy Attorney General for the District of Columbia at the time the brief was filed, were on the brief, for respondent.

Before RUIZ, REID, and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

The District of Columbia Rental Housing Commission ("RHC" or "Commission") affirmed the Order of the District of Columbia Rent Administrator which imposed on petitioner, Bernstein Management Corporation, a civil fine and treble damages, after finding that it violated the Rental Housing Act, D.C.Code § 42–3501.01 et seq. (2001), by charging rent in excess of the allowable ceiling. Petitioner argues that neither the Rent Administrator nor the Commission had authority to impose the sanctions and that the evidence did not, in any event, support the imposition of sanctions in this case.[1] We conclude that they had authority to impose the penalties, and that there was substantial evidence of record to support the findings of willfulness and bad faith necessary to impose the civil fine and treble damages against petitioner. We therefore affirm.

## I.

Petitioner is the managing agent of Columbia Realty Venture, the owner of multiunit rental buildings in the District of Columbia. On October 29, 1996, petitioner filed a registration form with the District of Columbia Rental Accommodations and Conversion Division ("RACD") reflecting that, as of October 1, 1996, the rent ceiling for apartment No. 103 in the rental building located at 829 Quincy Street, N.W. was $772.[2] On November 14, 1996, appellant leased apartment No. 103 to Belinda Sheppard for the monthly rent of $675. The lease agreement stated that the "legal rent" on the apartment was $772.[3] In July 1998, petitioner increased Ms. Sheppard's rent to $689 per month; and in July 2000, to $746 per month, leaving only $26 in unimplemented increases under the ceiling established in 1996. In July 2001, petitioner increased Ms. Sheppard's rent to $821 per month, $49 above the rent ceiling established in 1996; and in July 2002, the rent was raised to $882 per month, which was $110 above the rent ceiling. On November 7, 2002, Ms. Sheppard filed a petition with the District of Columbia Rent Administrator complaining that petitioner was charging rent in excess of the applicable rent ceiling.

During the hearing before the Rent Administrator there was no dispute about the rent increases, but petitioner asserted that they were properly made pursuant to an unimplemented rent ceiling adjustment that predated the $772 ceiling imposed in 1996. Petitioner, however, presented no evidence to establish the existence of the claimed rent ceiling adjustment, but took the position that the RACD's records

---

1. Petitioner does not contest the finding that it charged excessive rent.

2. In order to monitor rent increases subject to the statutory scheme for stabilizing rent in the District of Columbia, landlords are required to register rental units with the RACD of the Department of Consumer and Regulatory Affairs, and a "base rent" is determined for each registered unit. See D.C.Code § 42–

3501.03(4) (2001). The base rent level may then be increased up to a "rent ceiling" in accordance with the Act. See Revithes v. D.C. Rental Housing Comm'n, 536 A.2d 1007, 1009–10 (D.C.1987).

3. Although the lease did not use the word "ceiling," the term "legal rent" referred to the rental ceiling of $772 imposed on the property by the RACD.

"may be incomplete" and that there "might be" pre–1996 rent ceiling adjustments of sufficient size to justify the rent increases in 2001 and 2002. On September 16, 2003, the Rent Administrator found that petitioner had intentionally charged Ms. Sheppard rent in excess of the rent ceiling over a two-year period, and, based on that fact, awarded to Ms. Sheppard treble damages in the amount of $4,914[4] and imposed a civil fine of $2,500 against petitioner. The Rent Administrator discounted petitioner's vague references to an unimplement rent ceiling and reasoned that, as a large property management company, petitioner could not have mistakenly or inadvertently calculated the rent applicable to Ms. Sheppard's apartment. Petitioner filed a motion for reconsideration, which was denied.[5] Petitioner next sought the Commission's review. On August 12, 2005, the Commission issued its final decision and order affirming the Rent Administrator's ruling in all respects. This petition for review ensued.

## II.

■■■ Our scope of review in administrative cases prohibits the substitution of this court's judgment in areas of expertise reserved for the administrative agency, *see Kegley v. District of Columbia,* 440 A.2d 1013, 1018 (D.C.1982), including an agency's reasonable interpretation of the statute it is charged with implementing. *See Dorchester House Assocs. Ltd. P'ship v. D.C. Rental Hous. Comm'n,* 938 A.2d 696, 702 (D.C.2007). Under the judicial review provisions of the District of Columbia Administrative Procedure Act ("DCAPA"), *see* D.C.Code § 2–510 (2001), the court inquires whether the agency made findings of fact on each material, contested factual issue, based its findings on substantial evidence, and drew conclusions of law that flow rationally from those findings. *See Bio–Med. Applications of the District of Columbia v. D.C. Bd. of Appeals & Review,* 829 A.2d 208, 215 (D.C.2003). Agency findings of fact and conclusions of law must be affirmed if supported by and in accordance with reliable, probative and substantive evidence in the record. *See id.* This court will reverse a decision that was made arbitrarily, capriciously, or otherwise not in accordance with law or contrary to constitutional rights; or in excess of statutory jurisdiction or authority; or without observance of procedure required by law. *See* D.C.Code § 2–510(a)(3) (2001).

## Rental Housing Act of 1985 and Department of Consumer and Regulatory Affairs Civil Infractions Act

Under the Rental Housing Act of 1985, the Rent Administrator and the Rental Housing Commission were authorized to impose fines by virtue of D.C. Law 6–10, which became effective July 17, 1985. The act provides in relevant part:

> Any person who willfully (1) collects a rent increase after it has been disapproved under this chapter, until and unless the disapproval has been reversed by a court of competent jurisdiction, (2)

---

4. These damages amounted to three times the total overcharges which Ms. Sheppard paid over the two-year period. *See* D.C.Code § 42–3509.01(a) (2007 Supp.) ("Any person who knowingly ... demands or receives any rent for a rental unit in excess of the maximum allowable rent applicable to that rental unit ... shall be held liable by the Rent Administrator or Rental Housing Commission, as applicable, for the amount by which the rent exceeds the applicable rent charged or for treble that amount (in the event of bad faith)....").

5. In addition to challenging the imposition of sanctions, petitioner argued that the statute of limitations barred the tenant's claim. That argument is not made in the petition to the court.

makes a false statement in any document filed under this chapter, (3) commits any other act in violation of any provision of this chapter or of any final administrative order issued under this chapter, or (4) fails to meet obligations required under this chapter shall be subject to a *civil fine*[6] of not more than $5,000 for each violation.

D.C.Code § 42–3509.01(b) (2001) (emphasis added).

Three months later, in October 1985, the Council enacted the Department of Consumer and Regulatory Affairs Civil Infractions Act ("Civil Infractions Act"), D.C. Law 6–42, D.C.Code § 2–1801.01 *et seq.* The Civil Infractions Act states that:

It is the purpose of the Council of the District of Columbia in the adoption of this chapter to provide for the imposition of *alternative* civil sanctions for infractions of laws and regulations amended by title IV, and to provide for a uniform and expeditious system of administrative adjudication with respect to the infractions.

D.C.Code § 2–1801.01 (2001) (emphasis added). Title IV of the Civil Infractions Act amended 92 laws, including the Rental

Housing Act, to supplement the authority of the D.C. Department of Consumer and Regulatory Affairs ("DCRA"), which had been created in 1983, to impose fines, penalties, and fees. *See Revithes v. D.C. Rental Housing Comm'n, supra* note 1, 536 A.2d at 1022 n. 35 (citing COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS OF THE DISTRICT OF COLUMBIA, COMMITTEE REPORT ON BILL 6–187 "DISTRICT OF COLUMBIA CONSUMER AND REGULATORY AFFAIRS CIVIL INFRACTIONS ACT OF 1985" at 7–13 (June 11, 1985)).

The Civil Infractions Act amended the Rental Housing Act to provide that:

Civil fines, penalties, and fees *may* be imposed as *alternative* sanctions for any infraction of subsections (b),[7](d) and (e)[8] of this section, or any rules or regulations issued under the authority of these subsections, pursuant to Chapter 18 of Title 2. Adjudication of any infraction of these subsections shall be pursuant to Chapter 18 of Title 2.[9]

D.C.Code § 42–3509.01(f) (2001) (emphasis added).

In addition, the Rental Housing Act allows for the imposition of treble damages:

Any person who knowingly (1) demands or receives any rent for a rental unit in

**6.** In 1986, the D.C. Council inserted the word "civil" before the word "fine." *See* B. No. 6–406 (D.C. 1986) (amending D.C. Law 6–10) ("The intent of this amendment is to make clear that the fines authorized by ... the Rental Housing Act of 1985 are to be civil fines, rather than criminal fines. The effect is to make clear that the Rental Housing Commission and the Rent Administrator may impose the fines authorized by this subsection.").

**7.** Subsection (b), D.C.Code § 42–3509.01(b), quoted *supra*, provides for imposition of a civil penalty for willful violations of the Rental Housing Act.

**8.** Subsections (d) and (e), D.C.Code §§ 42–3509.01(d) & (e), provide for imposition of a

fine for violations of the Tenant Assistance Program (subsection (d)) and for discrimination against persons receiving or eligible for benefits under the Tenant Assistance Program (subsection (e)).

**9.** Chapter 18 of Title 2 of the D.C.Code, *see* D.C.Code §§ 2–1801.01 *et seq.*, details the procedures that Administrative Law Judges ("ALJs") and attorney examiners must follow in order to adjudicate claims or impose sanctions. *See, e.g.,* D.C.Code §§ 2–1801.04 (schedule of fines), –1801.06 (summary action), –1802.01 (notice of infractions), –1802.02 (answer), –1802.03 (hearing). This chapter does not empower a specific agency with exclusive authority to impose sanctions as it refers to ALJs and attorney examiners in general. *See* D.C.Code § 2–1801.03 (2001).

excess of the maximum allowable rent applicable to that rental unit under the provisions of subchapter II of this chapter, or (2) substantially reduces or eliminates related services previously provided for a rental unit, shall be held liable by the *Rent Administrator or Rental Housing Commission,* as applicable, for the amount by which the rent exceeds the applicable rent charged or for treble that amount (in the event of bad faith) and/or for a roll back of the rent to the amount the Rent Administrator or Rental Housing Commission determines.

D.C.Code § 42–3509.01(a) (2007 Supp.) (emphasis added).

### III.

Petitioner contends that the Civil Infractions Act became the only means—and DCRA the sole agency—to enforce certain administrative laws, including the Rental Housing Act, without resort to the criminal process, implicitly repealing the preexisting authority of the Rent Administrator and the RHC to impose fines under D.C. Law 6–10. Petitioner relies on *F.W. Woolworth Co. v. D.C. Bd. of Appeals & Review,* 579 A.2d 713, 717 n. 6 (D.C.1990) for this proposition.

In *F.W. Woolworth Co.,* the DCRA imposed a civil fine for operating a vending machine without a license. *See id.* at 714. This court decided that although the DCRA had authority to impose civil fines, because no fine for a violation of that kind was included in the schedule of fines issued pursuant to the Civil Infractions Act, *see* D.C.Code § 2–1801.04, the DCRA had no statutory basis for imposing that specific fine. *See F.W. Woolworth Co.,* 579 A.2d at 719. At no point, however, did we state that DCRA was the *only* agency in the District with authority to impose civil fines. Indeed, in footnote six, the portion of the opinion on which petitioner relies, we quoted the language of D.C.Code § 2–1801.01, which indicates that the purpose of the Civil Infractions Act is to provide for the "imposition of *alternative* civil sanctions," not to replace existing authority to impose such sanctions. *See F.W. Woolworth Co.,* 579 A.2d at 717 n. 6 (emphasis added). Thus, the language of the statute is clear that the legislature's intent in enacting the Civil Infractions Act was not to empower the DCRA with an exclusive remedy, but with an alternative one.

Petitioner argues nonetheless that the amendment supplementing the authority of the DCRA to enforce the Rental Housing Act effectuated by the Civil Infractions Act, *see* D.C.Code § 42–3509.01(f), replaced the authority that the Rent Administrator and the RHC had under the Rental Housing Act, and placed it in the DCRA exclusively. Petitioner's argument that the Civil Infractions Act divested the Rent Administrator and the RHC of authority to impose fines pursuant to the Rental Housing Act, however, has already been addressed by this court. In *Revithes,* we "reject[ed] the contention that the Council's passage of the Civil Infractions Act amending the 1985 Rental Housing Act compels the conclusion that the RHC was not authorized to impose fines under the prior rental housing acts." 536 A.2d at 1022 n. 35. We further held that under the Civil Infractions Act, the "RHC is indisputably authorized to impose fines pursuant to ... any ... provision of the penalty section" of the Rental Housing Act. *Id.* at 1022. We further note that when the Civil Infractions Act added subsection (f) to the Rental Housing Act in 1985 to give DCRA power to impose alternative sanctions, the Council left intact subsection (a), which explicitly provides that, in case of bad faith violations, the Rent Administrator and the Commission are empowered to assess penalties treble

the amount by which a rent charged exceeds the allowable ceiling. *See* D.C.Code § 42–3509.01(a) (2007 Supp.).

■ Petitioner's argument that the Civil Infractions Act (permitting the imposition of alternative civil fines by DCRA) implicitly repealed D.C.Code § 42–3509.01(b)(4) (authorizing the imposition of civil fines up to $5000 by the RHC and the Rent Administrator) must overcome the principle that "[r]epeals by implication are not favored." *Luck v. District of Columbia*, 617 A.2d 509, 514 (D.C.1992). When two successive legislative enactments address the same subject, the rule is to give effect to both, if possible. *See United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1087 (D.C.1997) (en banc). Indeed, "in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is [that] the earlier and later statutes are irreconcilable." *Id.* (citations omitted) (alteration in original). That is not the situation here. As we explained in *Revithes*,

> the RHC's authority was not limited ... since the RHC unquestionably had power to impose treble damages. Moreover, the Civil Infractions Act did not purport to specifically review the prior authority of the RHC, but rather, to guarantee authority to impose fines in a simple and uniform fashion under all the 92 laws the Act amended at the time of its passage.

536 A.2d at 1022 n. 35. As in the case of treble damages, we conclude that the Civil Infractions Act did not replace the Rent Administrator's and RHC's preexisting authority to impose civil fines under the Rental Housing Act, but rather supplemented it with alternative civil sanctions under DCRA's authority. *See* D.C.Code § 2–1801.01 (2001). The timing of the Council's passage of Law 6–10 in July 1985—which modified the Rental Housing Act to provide for the civil fine that appellant is contesting—just three months before enactment of the Civil Infractions Act lends additional support to this conclusion. The continuing validity of the preexisting penalty provision in the Rental Housing Act is underscored by the Council's amendment in 1986, following the Civil Infractions Act, by inserting the word "civil" before the word "fine" to D.C.Code § 42–3509.01(b). It is highly unlikely that the Council would have amended a statutory provision it had intended to repeal a year earlier. Therefore, we affirm the authority of the Rent Administrator and the RHC to impose civil fines pursuant to D.C.Code § 42–3509.01(b), and treble damages under D.C.Code § 42–3509.01(a).

## IV.

■ Petitioner argues that even if the Rent Administrator and the Commission had authority to impose fines and treble damages, their decision to do so in this case was arbitrary because the Rental Housing Act does not provide any standards on which an agency can base such a determination. We disagree. The statute authorizes the imposition of a civil fine up to $5,000 only if it is determined that the infraction was "willful[ ]," D.C.Code § 42–3509.01(b), and treble damages "in the event of bad faith," *id.* § 42–3509.01(a). The statutory penalties here are therefore distinguishable from the scheme disapproved in *County Council v. Investors Funding Corp.*, 270 Md. 403, 312 A.2d 225, 246–47 (1973), a case on which petitioner relies. In *County Council*, the Maryland statute provided for the imposition of a civil penalty not exceeding $1,000 "for the violation of any provision" of the landlord-tenant law. *Id.* at 246. The Maryland Court of Appeals held that because the penalties that the government charged in that case were not determined according

to the class or nature of the violation, and thus lacked legislative safeguards or standards, the grant of unlimited discretion to the county administrative body to fix such penalties was illegal. The D.C. statute, on the other hand, provides a standard, necessitating a finding of a willful violation or bad faith, and, therefore, the Rent Administrator and the Commission do not have the "unrestricted [and] unbridled discretion" that the administrative agency in *County Council* had. *Id.*

## V.

■ Petitioner was assessed a civil fine of $2,500 for "willfully" violating the Rental Housing Act, *see* D.C.Code § 42–3509.01(b), and ordered to pay treble damages in the amount of $4,914 to Ms. Sheppard for charging excess rent in "bad faith." *See* D.C.Code § 42–3509.01(a) (2007 Supp.). Petitioner contends that the evidence in this case did not substantially support a finding of willfulness or of bad faith. For the following reasons we affirm imposition of both sanctions.

The Rent Administrator ruled that

In the instant case, [petitioner] was well aware that a vacant unit rent adjustment had been implemented on apartment unit 103 in 1996, increasing the rent ceiling by $173. The [petitioner] was also aware that when [the tenant] took possession in November 1996, she was given a portion of the vacancy increase, which increased her rent charged to $675 per month. The remainder of the preserved rent increase was used in 1997, 1998, 1999, and 2000. In 2001 the [petitioner] exceeded the vacancy increase amount but the [petitioner] continued to increase the rent based on the vacancy adjustment in violation of the Act.

... Here, [petitioner] acted with specific intent to continue to collect a rent

charge [it] knew was illegal. There was no excuse for not knowing what [it was] doing. The [petitioner] is a large management company in the District of Columbia that should have known what the rules are pertaining to the recapture of a vacant unit rent adjustment. Here, [it] knowingly demanded a rent charge from [the tenant] based upon an improper rent charge in September 2001 when the adjustment should have ended. [Petitioner] continued to deceive [the tenant] in 2002 when [it] increased the rent charged again....

At the hearing before the Rent Administrator, the tenant submitted an exhibit that detailed petitioner's annual increases in the rent and the rent ceiling from 1997 to 2002. The amount petitioner represented as the rent ceiling, beginning in 1997, and the rent charged for the years 2000–2003, exceeded the ceiling of $772 that had been established in 1996. Petitioner did not dispute the tenant's exhibit or that it had represented that the permissible rent ceiling was greater than that established in 1996. Instead, it asserted that it had done so believing that a preexisting ceiling adjustment allowed the increased adjustments to the ceiling (and consequently, to the rent charged), but did not provide any reason or documentation to support that assertion. The Rent Administrator specifically addressed—and dismissed—petitioner's claimed reliance on an unidentified rent ceiling adjustment, finding it "unlikely, given the evidence on the record, that such a ceiling increase existed."

With respect to the imposition of fines, the Rent Administrator made the following findings of fact:

15. [Petitioner] intentional[ly] increased the rent charged [the tenant] during the period September 2001 and 2002 by charging a rent charge increase

in excess of the 1996 vacancy rent ceiling adjustment for unit 103.

16. [Petitioner] has acted in bad faith and the amount of treble damages ·is $4,914.

17. [Petitioner] shall be fined for knowingly and willingly violating the Act.

The Rental Housing Act specifically allows for the imposition of treble damages "in the event of bad faith." D.C.Code § 42–3509.01(a). We have defined "bad faith" as the "intent to deceive or defraud." *P'ship Placements, Inc. v. Landmark Ins. Co.*, 722 A.2d 837, 845 (D.C. 1998) (quoting *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1266 (10th Cir. 1995)). In its order affirming the imposition of treble damages, the Commission stated that "bad faith is equated with an 'intent on the part of the housing provider to misrepresent the rent ceiling or defraud the tenants or to avoid detection by the RACD,'" quoting its decision in *Velrey Properties v. Wallace*, TP 20, 431 (RHC Sept. 11, 1989). We owe deference to the Commission's interpretation of bad faith in the specific context of the Rental Housing Act. *See Dorchester House Assocs. Ltd. P'ship*, 938 A.2d at 702. In finding bad faith, the Rent Administrator placed great emphasis on the fact that, as a large property management company, petitioner "should have known" what the rules were pertaining to the recapture of rent adjustments, but also stated that petitioner "knew" that the increase of Ms. Sheppard's rent beyond the then-authorized rent ceiling was unlawful. The Rent Ad-

ministrator's order is not without ambiguity (particularly its reference to what petitioner "should have known") as to whether a finding was made that petitioner's rent increases were made with the knowledge that they were in violation of the law. But we think that viewed in context, the better reading is that the Rent Administrator found that petitioner acted advisedly to raise rent above the rent ceiling, and, moreover, attempted to conceal that fact. On the first point, the Rent Administrator specifically discounted petitioner's unsupported assertion that it believed it could further increase the rent under another (unspecified) unimplemented ceiling adjustment. As to the second point, the undisputed record is that petitioner not only charged rent in excess of the rent ceiling but also, beginning in 1997, represented to the tenant and to RACD that the rent ceiling was increased beyond the level established in 1996, without—as the Rent Administrator found—any basis for doing so. Our reading of the Rent Administrator's order is confirmed by the Commission's order affirming imposition of treble damages under the bad faith standard, which underscored that "[p]roviding false/erroneous information concerning rents actually charged to avoid detection is an indicator of bad faith." The record supports that petitioner "inten[ded] . . . to misrepresent the rent ceiling," *Velrey Properties, supra*, and therefore acted in bad faith, after having initially informed the tenant in the lease of the correct rent ceiling. See note 2, *supra*.[10]

---

10. Petitioner argues that its public filings of what it believed were permissible increases in the rent ceiling indicate that it was not acting in bad faith. Although the record does not contain any filing made by petitioner with the RACD other than the one with respect to the 1996 rent ceiling adjustment, it appears that the tenant may have relied on such public filings in compiling the chart (tenant's Exhibit

1) that is incorporated in the Commission's order. But the fact that petitioner may have misrepresented the rent ceiling to RACD as well as to the tenant is no guarantee of the petitioner's *bona fides*. The case on which petitioner relied in its motion for reconsideration is inapposite, for as the Commission there stated, "the housing provider offered testimonial and documentary evidence to il-

*A fortiori*, the evidence was sufficient to find that the rent increases were made "willfully." Willfulness has been variously defined. In *Quality Mgmt., Inc. v. D.C. Rental Housing Comm'n*, 505 A.2d 73 (D.C.1986), we quoted a legislative colloquy to the effect that willfulness "goes to intent to violate the law" and "demands a more culpable mental state," than the word "knowingly," which "is simply that you know what you are doing." *Id.* at 75–76 n. 6. Alternatively, we noted in *Parreco v. D.C. Rental Housing Comm'n*, 885 A.2d 327 (D.C.2005), that the RHC has defined willfulness to mean that "the person intended to do the action that constitutes the violation, not necessarily that the person was conscious of the fact that it was a violation." *Id.* at 337–38 n. 15. Here, the Rent Administrator appears to have used the stricter standard, finding that petitioner continued to increase a rent that it "knew was illegal."[11] The record supported that finding because, as noted, petitioner filed a registration form with the RACD reflecting that, as of October 1, 1996, the rent ceiling for Ms. Sheppard's unit was $772, and petitioner in turn informed Ms. Sheppard of that rent ceiling. It subsequently misinformed RACD and Ms. Sheppard that the rent ceiling had been increased without any basis for doing so. Thus, the record supports that petitioner was "well aware" of the maximum that it was legally entitled to charge, and "had no excuse" for increasing Ms. Sheppard's rent above that legal limit.

lustrate the fact that it implemented one authorized and previously unimplemented vacancy rent ceiling adjustment." *Lincoln Prop. Mgmt. v. Chibambo*, TP 24, 861 (RHC November 29, 2000). Here, on the other hand, the Rent Administrator did not believe petitioner's assertion and there was no documentary evidence that such an authorized but unimplemented rent ceiling adjustment existed.

Accordingly, we affirm the imposition of a civil fine and treble damages.

*So ordered.*

11. Petitioner does not challenge the agency's definition of "willfulness," and we do not address it here except to note that we defer to the agency's reasonable interpretation of the statute it is charged with implementing. *See Sawyer Prop. Mgmt. of Md., Inc. v. District of Columbia Rental Housing Com'n*, 877 A.2d 96, 103 (D.C.2005).