*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-374

NORTHEAST NEIGHBORS FOR RESPONSIBLE GROWTH, INC., *et al*., APPELLANTS,

v.

APPLETREE INSTITUTE FOR EDUCATION INNOVATION, INC., *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-1942-11)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued January 17, 2013                    Decided June 12, 2014)

*Ashley C. Haun,* with whom *Donald R. Dinan* was on the brief, for appellants.

*Jason J. Mendro*, with whom *Mark A. Perry* and *Gustav W. Eyler* were on the brief, for appellees.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Donna M. Murasky*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, filed a statement in lieu of brief on behalf of the District of Columbia, standing on the order of the Superior Court and the brief of appellees.

Before BECKWITH and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

RUIZ, *Senior Judge*: This appeal presents us with an issue of first impression that requires us to interpret D.C. Code § 6-641.09 (a) (2012 Repl.), a statute enacted by Congress in 1938, which provides that "specially damaged" neighboring property owners may seek an order from Superior Court to enjoin construction or use in violation of zoning regulations, in light of the District of Columbia Administrative Procedures Act (DCAPA), D.C. Code §§ 2-501 to -511 (2012 Repl.), enacted in 1968. The trial court dismissed appellants' complaint for injunctive relief under § 6-641.09 (a) for lack of jurisdiction over issues entrusted to the administrative appeals process. We hold that a proceeding for injunction under § 6-641.09 (a) is not a means around the procedures for administrative appeal and judicial review established pursuant to the DCAPA. We conclude, however, that dismissal with prejudice of appellants' complaint for injunctive relief is premature because there is still pending a petition for review of an administrative review proceeding that could affect appellants' entitlement to court-issued injunctive relief. We, therefore, reverse and remand for further proceedings.

**I.**

On February 9, 2006, AppleTree Institute for Education Innovation, Inc. ("AppleTree") applied for a permit with the Department of Consumer and Regulatory Affairs (DCRA) to build a public charter school for three- and four-

year-olds at 138 12th Street, in the Lincoln Park neighborhood of Northeast Washington, D.C. Occupying the lot at the time was a building which had been there since at least 1958, and which had been used for various non-residential purposes. The lot sits within an "R-4" zoning district, which is a residential area containing primarily row houses. 11 DCMR § 330.1 (2013). At the time AppleTree petitioned for a permit, the District of Columbia's zoning regulations did not specify any minimum lot dimensions for schools in an R-4 district, but instead set a minimum lot size of 4,000 square feet, with a minimum width of 40 feet, for any structure other than a single family residence. 11 DCMR § 401.3 (2005). Other similar districts, such as R-2 districts, whose zoning regulations provided minimum lot dimensions for public schools, required a minimum lot size of 9,000 square feet and a minimum width of 120 feet. *Id*. None of the zoning regulations specifically provided that the minimum lot dimensions for public schools applied to public *charter* schools as well as to traditional public schools.

On February 13, 2006, a few days after AppleTree filed its permit application, the Zoning Commission addressed this ambiguity in the regulations, passing an emergency regulation bringing charter schools within the definition of public schools for the purposes of the minimum lot dimensions. *See* 53 D.C. Reg.

2017 (March 17, 2006) (now codified at 11 DCMR § 199.1 (2013)).[1] The new regulation also set minimum lot dimensions for all public schools within an R-4 district of 9,000 square feet and 120 feet in width, the same standard that was already in place for R-2 districts, and required that schools for pre-elementary and elementary students include two parking spaces for every three teachers or other staff members. 11 DCMR § 401.3 (2013). Although AppleTree's planned use of the lot at 138 12th Street NE conformed to the zoning regulations in place when it applied for a permit, it did not meet the minimum lot dimensions for charter schools under the new regulation.

After a multi-year and convoluted process in which AppleTree was first denied a permit, then granted one under an exception,[2] only to have the permit

---

[1] This rule was re-adopted by another emergency rulemaking on June 12, 2006, *see* 53 D.C. Reg. 5898 (July 21, 2006), and made permanent on September 25, 2006, *see* 53 D.C. Reg. 9580 (December 1, 2006).

[2] AppleTree qualified for this exception under 11 DCMR § 401.1 (2013) because the existing nonconforming building, which had been on the lot since 1958, predated the R-4 zoning of the property. The Board of Zoning Adjustment (BZA) interpreted § 401.1 to allow enlargement or replacement of nonconforming pre-1958 buildings provided that the new building or enlargement complies with all other provisions of the zoning regulations.

subsequently revoked,[3] DCRA eventually issued a construction permit to AppleTree on April 28, 2008, *nunc pro tunc* to October 26, 2007. AppleTree then sought and received two year-long extensions of the permit followed by a year-long renewal of the permit while it sought funding to build the school. On December 3, 2010, DCRA revoked the permit once again, this time because it had been "issued in error" as it extended beyond the maximum period permitted by the regulations. *See* 12-A DCMR § 105.6 (2014).[4] However, DCRA withdrew the

---

[3] The revocation notice explained that DCRA had placed two administrative holds on AppleTree's permit application because it had yet to complete required environmental and zoning reviews. The permit was issued only because a DCRA employee "exceeded his authority" by removing the administrative holds and granting the permit before these reviews were completed.

[4] DCRA's notice of December 3, 2010, stated:

> This is official notice . . . from . . . DCRA . . . that Building Permit No. B1010205 is revoked effective ten (10) business days from the mailing of this Notice. This action is taken pursuant to [12A DCMR § 105.6], which authorizes the code official to revoke a building permit when the permit was issued in error. Here, the Construction Code does not allow an extension of the existing building permit beyond a total of eighteen months from the original building permit, B89587, which was issued on October 26, 2007.

At that time, permit holders were allowed up to three 180-day permit extensions beyond the initial one-year term of the permit. *See* 12-A DCMR § 105.5.1 (2010). Effective March 28, 2014, § 105.5.1 was amended to allow four extensions of 180 days each. 2014 D.C. Reg. Text 311886 (NS) (March 28, 2014).

revocation of the permit two months later, on February 24, 2011, without explanation, and confirmed the validity of the permit to September 7, 2011.

Appellant Northeast Neighbors for Responsible Growth, Inc. (NNRG) is a non-profit community organization that seeks to "ensur[e] that the appropriate zoning laws and regulations are followed and enforced throughout the District of Columbia in the placement and construction of schools." Appellants Ilene Blinick and Joseph Jorgens are NNRG members who own property on the same block as the AppleTree school site; appellant Blinick's property is adjacent to the AppleTree site. Appellants oppose the construction and use of the school at this location. On March 15, 2011, after DCRA had confirmed the extension of the permit until September 7 of that year, appellants filed a complaint in Superior Court pursuant to D.C. Code § 6-641.09 (a). They sought declarations that AppleTree's permit was invalid[5] and that AppleTree is bound by the current zoning

---

[5] Appellants argue that the permit was invalid for various reasons: (1) construction did not start within the six-month period of issuance of the permit, as required by 11 DCMR § 3130.3 (2013); (2) the permit authorized construction that did not comply with the minimum lot requirements for charter schools adopted in 2006, see 11 DCMR § 401.3 (2013); and (3) the permit extensions exceeded the eighteen-month maximum then allowed by 12-A DCMR § 105.5.1 (2010). See note 4, *supra*. AppleTree disputes these arguments on the law and the facts. No administrative body has considered or decided these arguments. Because the trial court dismissed the complaint, it did not reach the merits underlying appellants' request for declaratory relief. In light of our disposition, neither do we.

requirements.[6] They also sought to enjoin construction of the school unless it complied with current zoning requirements for schools.[7] The Superior Court dismissed the complaint with prejudice, adopting AppleTree's argument that the court lacked subject matter jurisdiction over the case because appellants had failed to exhaust their administrative remedies. The dismissal was also based on the court's conclusion that any administrative challenge to the permit in the appropriate forum, either to the Board of Zoning Adjustment (BZA) challenging the permit renewal granted in September 2010, or to the Office of Administrative Hearings (OAH) challenging DCRA's withdrawal of the revocation notice, was time-barred.

---

[6] Appellants contend that no valid permit can be issued unless the construction is fully in compliance with current zoning requirements because the exception based on the previously nonconforming use is no longer available. If a permit is allowed to lapse, as appellants argue happened here, 11 DCMR § 3202.7 (2013) does not allow the holder of the lapsed permit to renew it under the zoning regulations in place when it was originally issued. Rather, appellants argue, the permit application must be reprocessed and the permit may be issued only if the proposed construction or use conforms to the zoning regulations in place at the time of re-application. *See* §§ 3202.6 to 3202.7.

[7] At the time appellants filed their complaint, construction had commenced. By the time of oral argument before this court, the school had been built and was in operation.

Concurrently with their filing in Superior Court, on April 25, 2011, appellants also appealed DCRA's withdrawal of the revocation of AppleTree's permit to the BZA, arguing that it was contrary to the regulations. On February 17, 2012, the BZA dismissed the appeal for lack of jurisdiction, on the ground that appellants' challenge was not based on the zoning regulations, but—as the notice of revocation had cited, see note 4, *supra*—on the construction code. Appellants filed a petition for review of the BZA's dismissal in this court. That appeal, No. 12-AA-334, has been stayed at the request of the parties pending disposition of this appeal. *See Ne. Neighbors for Responsible Growth, Inc. v. District of Columbia Bd. of Zoning Adjustment*, No. 12-AA-334 (D.C. July 12, 2012).

## II.

The central question on appeal is whether D.C. Code § 6-641.09 (a) allows appellants to go directly to Superior Court to challenge the validity of AppleTree's permit. Interpretation of statutes presents a question of law that we review *de novo*. *See Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008). We also review *de novo* dismissals of a complaint under Superior Court Civil Rule 12 (b). *Grimes v. District of Columbia*, 89 A.3d 107, 112 (D.C. 2014). Because we are reviewing dismissal of a complaint and because

AppleTree has brought a "facial"[8] challenge to the trial court's jurisdiction under D.C. Code § 6-641.09 (a), our review takes as true all of the factual allegations in the complaint. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 709 (D.C. 2013) (dismissal of complaint); *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002) (facial challenge to statute).

D.C. Code § 6-641.09 (a) provides in pertinent part that,

> It shall be unlawful to erect . . . any building . . . within the District of Columbia without obtaining a building permit from the Inspector of Buildings, and said Inspector shall not issue any permit for the erection . . . of any building . . . unless the plans of and for the proposed erection . . . fully conform to the provisions of [D.C. Code §§ 6-641.01 to -.15] and of the regulations adopted under said sections. . . [A]ny neighboring property owner or occupant who would be specially damaged by any such violation may, in addition to all other remedies provided by law, institute injunction, mandamus, or other appropriate action or proceeding to prevent such unlawful erection . . . or use, or to correct or abate such violation.

---

[8] A "facial" challenge to jurisdiction is one which does not rest on disputes between the parties about material facts pertaining to the court's jurisdiction. *Heard v. Johnson,* 810 A.2d 871, 877 (D.C. 2002).

Under the "plain reading" of this provision that appellants urge upon the court, § 6-641.09 (a) authorizes them, as "neighboring property owner[s]," to ask the Superior Court to enjoin any construction at 138 12th Street, NE, even if a permit has been issued, if the construction plans do not conform to the District's zoning regulations, provided that the construction would "specially damage[]" them.[9] We reject this reading of § 6-641.09 (a), as the trial court did, and conclude that appellants were required to initiate their challenge to the validity of the permit through the administrative appeals process established pursuant to the DCAPA.

Statutory interpretation is a "holistic endeavor." *Cook v. Edgewood Mgmt. Corp.*, 825 A.2d 939, 946 (D.C. 2003). Although we begin with the statute's text and give effect to its plain meaning if it is unambiguous, we are mindful that even if the statutory language has a superficial clarity, a detailed consideration of other factors, such as the specific context in which the language is used and the broader context of the statute as a whole, can reveal ambiguities that must be resolved. *See Adgerson v. Police & Firefighters Ret. & Relief Bd.*, 73 A.3d 985, 991 (D.C.

---

[9] Specifically, appellants claim that the AppleTree school's nonconformance with zoning requirements causes "increased noise, traffic and congestion" that will irreparably harm their quality of life and depreciate the economic value of their properties. Appellant Blinick, whose property is adjacent to the AppleTree site, also alleges that the construction itself has damaged her property.

2013).  We also consider legislative history.  *See Bannum, Inc., v. District of Columbia Bd. of Zoning Adjustment*, 894 A.2d 423, 433-34 (D.C. 2006).

If our review of a statute's broader context reveals another statute that is arguably inconsistent, we interpret both provisions *in pari materia*, that is, as if they were passed by a single legislature.  *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1087 (D.C. 1997), *adopted en banc*, 711 A.2d 85 (D.C. 1998).  Our goal in interpretation is to give effect to both provisions if possible, and repeals by implication are disfavored.  *Id*. (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939) and *Luck v. District of Columbia*, 617 A.2d 509, 514 (D.C. 1992)).  We will conclude that the later statute repealed the earlier by implication only if there is either a clear and manifest legislative intention to repeal, or the statutes themselves are "irreconcilable, . . . and so inconsistent that the two cannot have concurrent operation."  *Id.* (quoting *Speyer v. Barry*, 588 A.2d 1147, 1165 (D.C. 1991)).

We begin with the plain language of § 6-641.09 (a), which prohibits the Inspector of Buildings (now DCRA)[10] from issuing a permit for a construction or

---

[10]  DCRA now plays this role pursuant to Reorganization Plan No. 1 of 1983.  D.C. Code D. 1, T. 1, Ch. 15, Subch. VI, Pt. A, 1983 Plan 1 (2012 Repl.).

use that does not conform to the zoning regulations. It also provides remedies "in addition to all other remedies provided by law" to neighbors "specially damaged" by unlawful construction and use. Specifically, § 6-641.09 (a) allows specially damaged neighbors to "institute injunction, mandamus, or any other appropriate action" to prevent, correct, or abate unlawful construction or use.

Section 6-641.09[11] was originally enacted in 1938 as a part of comprehensive legislation regulating zoning within the District. The 1938 Act refined the role of the Zoning Commission, which was created in 1920, and established the BZA.[12] Under the 1938 scheme, still current, the Zoning Commission sets zoning regulations, and the DCRA issues permits under those regulations. Any person aggrieved by a decision granting or denying a permit application can appeal to the BZA. D.C. Code § 6-641.07 (f) (2012 Repl.). Thus, although the 1938 Act does not say that the Superior Court cannot consider a permit's validity, it explicitly directs persons aggrieved by a decision on a permit application to appeal that decision to the BZA.

---

[11] Section 6-641.09 was previously codified at D.C. Code § 5-426 (1981) and § 5-422 (1967).

[12] Act of June 20, 1938, Pub. L. No. 75-684, 52 Stat. 797 (codified at D.C. Code §§ 6-641.01 to -.09 (2012 Repl.)).

At that time, thirty years before the DCAPA was enacted, the courts were exclusively responsible for the enforcement of civil regulations. Unlawful construction or use of property was treated as a type of nuisance at common law, for which neighboring property owners could obtain an injunction if they proved special damages. *See Brawner Bldg., Inc. v. Shehyn*, 442 F.2d 847, 854 (D.C. Cir. 1971) (citing *Wolpe v. Poretsky*, 144 F.2d 505, 508 (D.C. Cir. 1944)). The 1938 Act codified this common law right. But the right to seek an injunction or mandamus relief at common law was not available, even before the DCAPA was enacted, where the aggrieved party could appeal a decision on a permit application to the agency. *See United States ex rel Connor v. District of Columbia*, 61 F.2d 1015, 1016 (D.C. Cir. 1932) ("Where a party has a right to a writ of error or appeal, he may not resort to the extraordinary writ of mandamus or prohibition."). The 1938 Act, read in the light of that common law principle, would require parties aggrieved by a decision on a permit application to go to the BZA for a determination whether the decision was lawful before resorting to Superior Court for an injunction. This interpretation of the 1938 Act as a whole stands in tension with appellants' interpretation of § 6-641.09 (a), according to which specially damaged neighbors can also seek review of a decision on a permit application in Superior Court. On appellants' reading, the 1938 Act permitted two parallel and independent tracks of review of decisions on permit applications, one before the

BZA and another before the Superior Court. The clear disadvantages of such a system, including its inherent inefficiency and the potential for inconsistent decisions, make it unlikely that Congress implicitly intended to enact such a scheme.

There has been robust development of administrative law since 1938. Appellants' interpretation is also at odds with the now "well-established doctrine that where a statute provides an administrative forum to resolve disputes no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Dano Res. Recovery, Inc., v. District of Columbia*, 566 A.2d 483, 485 (D.C. 1989) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)) (internal quotation marks omitted). Since the DCAPA was adopted in 1968, District of Columbia law has provided a comprehensive scheme for the promulgation, implementation, and enforcement of a wide variety of regulations. Persons adversely affected by the District's decision on a regulatory matter must first seek review of that decision by following the procedure for administrative appeal before seeking review of the outcome of that appeal in court. *See, e.g.*, D.C. Code § 2-1831.16 (d)-(f) (2012 Repl.) (providing for judicial review of OAH orders). Where the agency proceeding meets the

definition of a "contested case,"[13] judicial review is exclusively in the District of Columbia Court of Appeals, not the Superior Court of the District of Columbia. D.C. Code § 2-510 (a) (2012 Repl.). Committee reports on the DCAPA make clear that one of its central purposes is to provide a "uniform means, whereby the final determination of an agency, other than certain rules or decisions expressly excepted by other provisions of the act, may be reviewed in court in accordance with traditional standards." H.R. Rep. No. 90-202, at 3 (1967); *see also* S. Rep. No. 90-1581, at 5-6 (1967) (noting that review of decisions of agencies of the District of Columbia was in some cases in the U.S. District Court for the District of Columbia, others in the U.S. Court of Appeals for the District of Columbia Circuit, others in the District of Columbia Court of Appeals, and still others in the District of Columbia Council, and observing that "[t]here is no discernible rationale for the confusing pattern of review channels that exists today").[14]

---

[13] A "contested case" is, certain exceptions aside, "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than [D.C. Code §§ 2-501 to -511 (2012 Repl.)]), or by constitutional right, to be determined after a hearing before the Mayor or before an agency." D.C. Code § 2-502 (8) (2012 Repl.).

[14] The DCAPA originally preserved the then-existing channel of judicial review for decisions on building permit applications. DCAPA, Pub. L. No. 90-614, § 11, 82 Stat. 1203, 1209 (1968) (providing that "orders and decisions of the Board of Zoning Adjustment . . . shall be subject to judicial review in those courts which review the orders and decisions of those agencies on the day before the date

(continued . . .)

Considered together, the 1938 Act, specifically § 6-641.07, and the DCAPA, have established the channel of review for DCRA's decisions on permit applications. If the agency decision is "based in whole or in part" on zoning regulations, appeal is first to the BZA. D.C. Code § 6-641.07 (f); 11 DCMR § 3100.2 (2013). If the permit decision rests on the construction code, the administrative appeal is before OAH. 12-A DCMR § 112.2.1 (2014). In both cases, the final administrative determination is subject to judicial review as a contested case exclusively in this court. D.C. Code § 2-510 (a); D.C. Code § 2-1831.16 (e).

As we have seen, appellant's reading of § 6-641.09 (a) sits awkwardly with the rest of the 1938 Act. It also conflicts with the DCAPA's comprehensive scheme for review of decisions of the District's administrative agencies. As appellants interpret § 6-641.09 (a), some people—neighbors who are "specially damaged" by construction or use of a building that violates zoning regulations— would have a right to bypass the first level of administrative appeal by seeking an

---

(. . . continued)
of enactment of this Act"). Within two years Congress amended the DCAPA to provide for review of BZA decisions in the District of Columbia Court of Appeals. District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, § 11-722, 84 Stat. 473, 481 (1970).

injunction in Superior Court.[15] This would contravene our requirement, based on considerations of administrative and judicial efficiency, that "all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review." *District of Columbia Hous. Auth. v. District of Columbia Office of Human Rights*, 881 A.2d 600, 611 (D.C. 2005). Moreover, it would also thwart the review process set forth in the DCAPA, under which judicial review of a final agency decision in a contested case (such as a permit application) is with this court, not the Superior Court. D.C. Code § 2-510 (a). It is well established that § 2-510 "provides for exclusive appellate review of administrative action in contested cases, and thereby precludes concurrent jurisdiction in the

---

[15] We have equated standing under the DCAPA—whether a person has "suffer[ed] a legal wrong" or has been "adversely affected or aggrieved," D.C. Code § 2-510 (a)—with the standing required to satisfy the "case or controversy" constitutional minimum under Article III and the federal APA. *See Appleseed Ctr. for Law & Justice v. District of Columbia Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1199-1200 n.21 (D.C. 2012). We have not attempted to similarly define what constitutes "special damages" that will give standing to a neighboring property owner to seek an injunction under D.C. Code § 6-641.09 (a). That requirement is derived from the common law tort for public nuisance. *See B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 882-83 (D.C. 1982). In specific cases, however, we have determined that violation of a zoning order that requires a building to maintain a certain number of parking spaces does provide standing to residents of the building who claim to have been damaged by having to pay increased or unreasonable parking rates at locations farther away. *See Lund v. Watergate Investors P'ship*, 728 A.2d 77, 83 (D.C. 1999). On the other hand, we have held that claims based on business competition or a generalized impact on "the aesthetics of the area" surrounding the neighbor due to increased air pollution, traffic and "urban blight" do not provide standing. *B & W Mgmt., Inc.*, 451 A.2d at 883.

Superior Court." *Fair Care Found., A.G. v. District of Columbia Dep't of Ins. & Sec. Regulation*, 716 A.2d 987, 997 (D.C. 1998) (quoting *District of Columbia v. Douglass*, 452 A.2d 329, 332-33 (D.C. 1982)).

Appellant's reading of § 6-641.09 (a) violates these principles because before a decision on a request for an injunction could be made, the Superior Court, not this court, would necessarily have to determine whether a permit was validly issued by the agency in conformance with the applicable zoning regulations, and it would do so without the benefit of and the deference due to the administrative appeals process. *See District of Columbia Dep't of Pub. Works v. L.G. Indus., Inc.*, 758 A.2d 950, 956 (D.C. 2000) ("Our cases have been uniform in requiring [matters placed within agency competence] to be decided by the administrative body charged with their resolution."). Thus, even though § 6-641.09 (a) could be read as appellants propose,[16] we think the better interpretation is one that avoids a conflict with principles of administrative law and the procedures expressly set out

---

[16] Appellees correctly point out that none of our cases has so read § 6-641.09 (a), citing several opinions of this court in cases involving claims that a particular use or construction was unauthorized. *See, e.g.*, *L.G. Indus., Inc.*, 758 A.2d at 951 (activities did not come within terms of certificate of occupancy); *President & Dirs. of Georgetown Coll. for Georgetown Univ. v. Diavatis*, 470 A.2d 1248, 1249-50 (D.C. 1983) (no certificate of occupancy). Equally true, however, is that none of our cases has decided the issue under § 6-641.09 (a) that appellants present in this appeal.

in the DCAPA. In this case, the statutes can be read together in a manner that preserves the vitality of § 6-641.09 (a) within the context of the process for review of agency decisions established by the DCAPA.

Our goal in interpreting § 6-641.09 (a) is to give effect to its language without running afoul of § 6-641.07 or the DCAPA. The plain language of § 6-641.09 (a) allows to the District of Columbia and specially damaged neighbors certain remedies "in addition to all other remedies provided by law" for "unlawful" construction or use, including injunctive relief. "Unlawful" construction or use is one that proceeds without a permit, or in excess of what a permit allows, or under a permit that has been determined to be invalid. Because § 6-641.09 (a) does not explicitly invest the Superior Court with authority to decide whether an existing permit is invalid, its plain language does not mandate appellants' interpretation.

An interpretation of § 6-641.09 (a) that allows neighbors to seek an injunction in Superior Court to prevent construction or use, but precludes the Superior Court from determining whether a permit has been properly issued under the zoning regulations, is fully consistent with the language of the statute. This interpretation makes § 6-641.09 (a) a means to enforce the zoning regulations by seeking a certain type of remedy, but not a means to initially question the legality

of an agency order. It preserves the right of action created by § 6-641.09 (a) without interfering with § 6-641.07 or the DCAPA's comprehensive scheme for administrative appeal and appellate judicial review of agency orders in contested cases.

Appellants argue, nonetheless, that the DCAPA does not pose an obstacle and they are free to proceed without resort to the usual administrative appeals and appellate judicial review process because § 6-641.09 (a) states that its remedy is "*in addition to* all other remedies provided by law." That interpretation, we conclude, reads too much into the language of § 6-641.09 (a) and does not take related provisions into account. First, what the statute says is that it is the "remedies" in § 6-641.09 (a) that are "in addition to" others provided by law, and the statute lists what these additional statutory remedies are: "injunction, mandamus or other appropriate action or proceeding to prevent such unlawful . . . construction . . . or use, or to correct or abate" a violation of the zoning regulations.[17] As described in § 6-641.09 (a), a "remedy" is a type of relief, not a

---

[17] There are other remedies available outside § 6-641.09 (a). A neighboring property owner may, for example, sue for damages under a common law public nuisance theory, based on violation of the zoning regulations. *See B & W Mgmt., Inc.*, 451 A.2d at 881. Section 6-641.09 also provides that "alternative sanctions"—"[c]ivil fines, penalties, and fees" may be imposed for infractions of the zoning regulations. Adjudication of infractions, however, is not before the

(continued . . .)

procedure for challenging the underlying action that the relief would address. Appellants read § 6-641.09 (a) as authorizing the Superior Court to decide whether a permit is unlawful. As we have discussed, this is inconsistent with the provisions of § 6-641.07, enacted at the same time and as part of the same law, which created the BZA as the administrative forum for appeals by "any person aggrieved . . . by any decision of the Inspector of Buildings [now DCRA] granting or refusing a building permit." D.C. Code § 6-641.07 (f). Both sections coexist most harmoniously if the injunctive-type remedies listed in § 6-641.09 (a) are considered to be available to enforce the ultimate agency decision, but only after the administrative appeal provided for in § 6-641.07 (f) has been completed.

Moreover, it obviously cannot be said that when Congress created a statutory injunctive remedy in 1938 "in addition to" other remedies, it intended to trump the comprehensive scheme it adopted in the DCAPA three decades later. Any doubt about Congress' intent in this regard is laid to rest by the legislative history of the DCAPA. See note 14, *supra*. Appellants' interpretation of § 6-641.09 (a) simply cannot be reconciled with its companion provision, § 6-641.07,

---

(. . . continued)
Superior Court, but conducted pursuant to "Chapter 18 of Title 2," which establishes a system of administrative adjudication and review. *See* D.C. Code §§ 2-1801.01 to -1803.03. (2012 Repl.).

which makes the BZA the forum for appeals of agency decisions on zoning issues, or with the DCAPA, which makes the District of Columbia Court of Appeals the exclusive reviewing court for all District of Columbia agency decisions in contested cases, including the BZA.

To be clear, our interpretation of § 6-641.09 (a) does not preclude the Superior Court from determining whether construction or use is unlawful, but it may do so only if that construction or use is proceeding without a permit that is legally required, or by reference to the terms of a permit. Once the Superior Court makes such a determination, it may issue an injunction or other appropriate remedy, but it has no authority to determine whether a permit was validly issued.

In coming to this conclusion, we find persuasive the reasoning of the D.C. Circuit applying D.C. Code § 5-422 (1967), the predecessor to § 6-641.09 (a), in *Brawner*.[18] There, the plaintiffs had sought preliminary and permanent injunctions against the District's operation of a neighboring community correctional center

_____

[18] *Brawner*, which was decided on February 23, 1971, is not binding on this court. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (holding that District of Columbia Court of Appeals is not bound by opinions of the D.C. Circuit issued after February 1, 1971, when the D.C. Court of Appeals became the highest court of the District of Columbia).

that had a certificate of occupancy as a rooming house. *Brawner*, 442 F.2d at 849. On appeal from the trial court's grant of permanent injunctive relief, the D.C. Circuit reversed the injunction and remanded the case so that the parties could seek a ruling from the BZA on the merits of the underlying claim that the correctional center, a halfway house, was not properly deemed a rooming house under the zoning regulations. The court reasoned as follows:

> There is no doubt of the right of property owners to seek to enjoin a use or proposed use of nearby or neighboring land that is both unlawful and adversely affects their interests. *Wolpe v. Poretsky*, [144 F.2d 505 (D.C. Cir. 1944)]; *Hazard v. Blessing*, 2 F.2d 916 (1924). The problem is the appropriateness of the District Court's deciding on the merits a claim that a use authorized by a certificate of occupancy unlawfully contravenes the zoning regulations in the absence of an appeal from the granting of the certificate of occupancy, and a decision by the Board [of Zoning Adjustment].
>
>  . . .
>
> The terms of the statute are not decisive. Section 5-422 grants the neighboring property owners . . . the remedies of injunction and mandamus "in addition to all other remedies provided by law." But the availability of mandamus or injunction depends on the jurisprudence underlying the proper occasion for the issuance of those writs.

*Brawner*, 442 F.2d at 854 (footnotes omitted). The merits of the underlying dispute, the court ruled, should be referred, in the first instance, to the BZA under the doctrine of primary jurisdiction. *Id*. at 855.

We conclude, for the foregoing reasons based on the language of § 6-641.09 (a), contextual interpretation in light of § 6-641.07 and the DCAPA, and legislative history, that § 6-641.09 (a) does not create an exception to established procedures for administrative appeal and appellate judicial review of contested cases under the DCAPA. Rather, § 6-641.09 (a) provides specific enforcement tools against unlawful construction or use—unlawful either because the necessary permit has not been obtained or, if a permit has been issued, it is not being complied with—to those neighboring property owners who would be specially damaged by the unlawful construction or use.

### III. Dismissal

The question remains, was dismissal of the complaint proper? Here, the trial court dismissed appellants' complaint with prejudice. The trial court adopted AppleTree's arguments that either the doctrine of exhaustion of remedies or primary jurisdiction required dismissal of the complaint for lack of jurisdiction.

"[T]he exhaustion requirement is not in general jurisdictional in nature, but rather must be applied in accord with its purposes." *Gilmore v. Bd. of Trs. of the Univ. of the District of Columbia*, 695 A.2d 1164, 1166 (D.C. 1997) (quoting *Andrade v. Lauer*, 729 F.2d 1475, 1484 (D.C. Cir. 1984) (as amended)) (listing purposes of exhaustion requirement: creating incentives to follow agency procedures by giving agencies enforcement authority, protecting agency autonomy, supporting judicial review by allowing the parties to develop a complete factual record, and promoting judicial economy). Thus, in this case, dismissal for failure to exhaust did not implicate the court's subject matter jurisdiction over the case.[19]

---

[19] Under the closely related doctrine of primary jurisdiction, a court that has jurisdiction over a claim may nonetheless find that a party raises questions over which an agency has primary jurisdiction, and that the court cannot resolve the claim until the agency addresses those questions. We have distinguished these two doctrines as follows:

> "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

(continued . . .)

This does not mean, however, that appellants were wrong in seeking recourse in the Superior Court under § 6-641.09 (a), especially as they were seeking interim relief in the form of a temporary restraining order to stop the construction that AppleTree had just commenced. The exhaustion requirement logically does not apply when there is no comparable administrative remedy available because there is nothing that could have been exhausted. *See District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 20 (D.C. 1993) (noting that there is an exception to the exhaustion requirement when the agency can only provide an inadequate remedy). What appellants could not do is seek a permanent remedy in court to the exclusion of filing a timely administrative appeal pursuant to the DCAPA. With such an administrative appeal under way, the trial court would have jurisdiction under § 6-641.09 (a) to order interim relief to preserve the option of granting any permanent injunction that might eventually be warranted.[20] But under the doctrine of primary

---

(. . . continued)
*Goode v. Antioch Univ.*, 544 A.2d 704, 705 (D.C. 1988) (*quoting Drayton v. Poretsky Mgmt., Inc*., 462 A.2d 1115, 1118 (D.C. 1983)).

[20] DCRA cannot enjoin construction, but it can immediately issue a "stop work order" blocking construction that violates the construction code or the zoning regulations. 12-A DCMR § 114.1 (2014). The District of Columbia can go to the Superior Court to seek to enjoin construction conducted in violation of a stop work order. D.C. Code § 6-1407 (a) (2012 Repl.); 12-A DCMR § 114.10 (2014). But neighbors have no right to petition DCRA to issue a stop work order. And even if one is issued, neighbors cannot seek an injunction to enforce it. Thus a specially damaged neighbor's action for preliminary injunctive relief to prevent unlawful

(continued . . .)

(. . . continued)

construction can only come from the Superior Court through a § 6-641.09 (a) action.

Even assuming that the agency's lack of power to grant temporary relief meant that the court could step in, there is still a question as to which court had the power to do so. The All Writs Act, 28 U.S.C. § 1651 (2012), empowers a court to issue an injunction in order to preserve the court's jurisdiction or to maintain the status quo pending administrative appeal in cases where review of the administrative action lies with the court. *See Group Ins. Admin.*, 633 A.2d at 15. This power "has been deemed merely incidental to the court's jurisdiction to review final agency action." *District of Columbia v. Greene*, 806 A.2d 216, 219 (D.C. 2002) (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966)). As we have explained in the previous section, the power of judicial review over the final orders of the BZA and OAH in contested cases lies exclusively with this court. Thus, the power would lie with this court, not Superior Court. However, the All Writs Act is not limited to such cases. The Superior Court, like this court, was created by Congress, so the All Writs Act applies equally to both. *See Group Ins. Admin.*, 633 A.2d at 15 (finding that a disappointed bidder could seek temporary relief in Superior Court under the Procurement Practices Act even before the Contract Appeals Board has issued a decision, because Contract Appeals Board decisions are reviewed in Superior Court). Thus, § 6-641.09 (a) itself could provide a basis to which the incidental power granted by the All Writs Act could attach in order to preserve the Superior Court's jurisdiction or maintain the status quo pending administrative review under the doctrine of primary jurisdiction. *See Brawner*, 442 F.2d at 856 (citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68-70 (1970)).

In this case, appellants requested a temporary restraining order (TRO), which the trial court denied on March 29, 2011. The trial court found that there was "no or insufficient immediate irreparable injury" to appellants, that they were not substantially likely to succeed on the merits, that the public interest was in balance or even weighed in support of construction, and that a TRO would cause significant harm to AppleTree. In denying the TRO on the merits, the trial court exercised its jurisdiction. As the trial court noted, it could continue to exercise jurisdiction to grant interim relief, consistent with the doctrine of primary jurisdiction, if immediate irreparable injuries developed. Similarly, if a trial court initially denies a TRO because it concludes that the requester is unlikely to prevail

(continued . . .)

jurisdiction, it should stay its hand from a final adjudication until the administrative appeal process, including any judicial review by this court, has run its course. If appellants succeeded in the administrative appeals and appellate judicial review process, they could then press in Superior Court their action for permanent injunctive relief under § 6-641.09 (a). As the court explained in *Brawner*,

> A property owner may be entitled to temporary relief in order to avoid irreparable injury, and if relief cannot be provided through the administrative remedy, there is a basis for a court's preliminary injunction. Assuming the District Court had jurisdiction to consider, and to grant or deny, the application for injunctive relief *pendente lite*, and was not required by the exhaustion doctrine to dismiss the litigation, nevertheless under the doctrine of primary jurisdiction it should not have proceeded to a final determination of the merits but should have stayed the action pending an appeal to the Board. This doctrine bids a court wait while the agency that has "primary jurisdiction" makes the initial determination—"until the administrative agency that has special competence in the field has ruled on (the issues)."

442 F.2d at 855 (quoting *Best v. Humboldt Placer Min. Co.*, 371 U.S. 334, 338 (1963)).

---

(. . . continued)
on the merits, its assessment could change if the administrative appeal is decided in the requester's favor even if that decision is pending judicial review in this court.

As we discussed in the previous section, the administrative appeals process was the proper vehicle to adjudicate appellants' claim that DCRA's grant of two one-year extensions and a one-year renewal of the permit violated the eighteen-month cap on extensions provided in 12-A DCMR § 105.5.1 (2010).[21] That challenge should have been brought within the period for appeal of the renewal, which was granted on September 17, 2010. *See* 11 DCMR § 3112.2 (2013) (giving "any person aggrieved by any order, requirement, decision, determination, or refusal made by an administrative officer or body . . . in the administration or enforcement of the Zoning Regulations" sixty days from the date he or she knew or reasonably should have known of the decision to appeal that decision, or ten days after the structure is "under roof"); *see also* 12-A DCMR § 112.2.1 (2013) (allowing persons aggrieved by a decision of the code official based in whole or in part on the construction code to appeal to OAH within ten business days after the person filing the appeal knew or should have known of the decision, whichever is earlier). By the time the trial court dismissed the complaint on March 6, 2012, the opportunity to file an administrative appeal—either with the BZA or OAH—of the

---

[21] "A permit extension is required if no work has begun within one year. Upon written request, and upon a showing of good cause, the code official is authorized to grant extensions of time not to exceed six (6) months per extension. Not more than three (3) extensions of time will be granted to any permit." 12-A DCMR § 105.5.1 (2010). Section 105.5.1 was amended in 2014 to allow up to four six-month extensions, see note 4, *supra*.

permit renewal, in 2010, had long passed. The trial court dismissed the complaint with prejudice, concluding that there was no existing or possible administrative judgment with respect to the claims challenging the permit that the court could enforce by means of injunctive relief.

Appellants contend, however, that dismissal was not warranted because their filing of an appeal with the BZA to contest DCRA's decision withdrawing the notice of intent to revoke permit extensions beyond eighteen months, see note 4, *supra*, sufficed to require the court to stay proceedings during the pendency of the administrative appeal under the doctrine of primary jurisdiction. That argument would have conceptual validity if one posits that it was theoretically possible, at the time the trial court dismissed the complaint, that the BZA might determine that DCRA's withdrawal of the revocation notice was erroneous. But the facts do not support it. On February 17, 2012, the BZA dismissed appellants' only administrative appeal, for lack of jurisdiction, on the ground that DCRA's revocation notice was based on the construction code—not on the zoning regulations—and therefore properly appealed to OAH. Appellants did not file an administrative appeal with OAH. Thus, when the trial court dismissed the complaint on March 6, 2012, there was no appeal pending before an administrative agency.

There is another wrinkle, however. The trial court dismissed the complaint before the time to petition for judicial review of the BZA dismissal had expired. Ten days after the complaint was dismissed, appellants filed a petition for review of the BZA's dismissal with this court. That appeal has been stayed at the parties' request, pending resolution of this appeal. The issues in that appeal have not been briefed and are not before the court at this time. But its pendency means that the DCAPA process with respect to the validity of AppleTree's permit has not been completed. We do not know whether appellants still intend to pursue that appeal. What we do know is that the dismissal of the complaint with prejudice would preclude them from seeking injunctive relief, even if they were to prevail, to enforce the ultimate adjudication of their claim. Without expressing any view on the merits of the pending appeal, we, therefore, reverse the dismissal with prejudice and remand the case for the trial court's further consideration. On remand, the trial court should consider the current facts, including whether the parties intend to pursue the stayed appeal, in light of this opinion.

*So ordered.*